✝ METHODIST PROT. CHURCH OF CINCINNATI v. HARRY L. LAWS ET AL.

1. A DEED FOR BURIAL PURPOSES, WITHOUT FORFEITURE CLAUSE, CONVEYS TITLE IN FEE.
   In 1833 K. conveyed, by warranty deed, to the plaintiff, a lot of land "for a place of burial and for other purposes," of about nine acres, "together with the use forever of a road 30 feet wide to be opened opposite the center of the above described tract or piece of land, through eastward to the Cincinnati & Springfield Turnpike." Said land was used by the plaintiff from the time of its purchase as a cemetery until in —— the city of Cincinnati prohibited any further interment therein, whereupon the bodies were removed and the land sub-divided into lots which the plaintiff is now selling: Held: That while this deed contains words indicating the purpose for which the premises are to be used, there are no words indicating that the grant is to be void and the property is to revert if the declared purpose is not carried out. The plaintiff therefore took a fee-simple title without reference as to whether the words "and all other purposes" in use by this deed should be construed to mean, "and all other purposes or purposes of a like nature."

2. A GRANT OF A RIGHT OF WAY, TO DETERMINE WHETHER AN OPEN OR CLOSED ROAD WAS INTENDED, CONSTRUED WITH REFERENCE TO SUBSEQUENT ACTS OF PARTIES.
   Shortly after the purchase plaintiff erected a fence around said cemetery, placing a gate at the end of the roadway. In 1885 litigation arose between plaintiff and K. about this gate, which was settled by an agreement between the parties, whereby K. agreed to place and keep the gate at the entrance to plaintiff's ground, and to macadamize the road. Plaintiff has now laid out streets through the land, one of which connects with the roadway through K's land. Defendant L. is at present the owner of this land. Plaintiff has removed the gate, and now asks that defendant L., who is about to re-erect it, be restrained from re-erecting the gate at the entrance to plaintiff's ground, and that its right be established to use the roadway over defendant's land as an open road, in connection with the street laid out by it through its grounds. Held, that the plaintiff is not entitled to the relief asked. Construing this deed in accordance with the intention of the parties, and considering its words in connection with the surrounding circumstances and the subsequent conduct of the parties in relation to the subject-matter, the roadway was not to be an open road.

3. AFTER SURRENDER OF RIGHT TO MAINTAIN AN OPEN WAY, LANDOWNER MAY ENCLOSE ENDS BY GATES.
   But assuming that we are wrong in our interpretation of this grant, defendant would be entitled to maintain this gate by reason of surrender or abandonment of plaintiff's right to an open way. In the litigation in 1885, defendant's right to obstruct said road by gates was a matter of dispute, which was settled between the parties by an agreement under which defendant graded and macadamized the road, and erected posts and a gate; and plaintiff is now estopped from denying its force and effect, which was that the posts and gate should remain.

4. EASEMENT DOES NOT INURE TO STRANGERS—GATES MAINTAINED AS AGAINST.
   But there is still another reason why defendant has a right to maintain the gate. The plaintiff may divide its estate as it has done into forty different parts, and each part may use this way, if owned by a separate owner. The burden is increased, but it is not of a different kind. It is not a new burden. But the plaintiff cannot license or invite a stranger to go upon this way. That would be imposing an additional or new burden. The plaintiff has laid out a public street which ends at the mouth of this way. The result must necessarily be, that by this street strangers—that is, the public generally—will be invited and led to go upon this way, if it is to be an open way, and they will be trespassers. This would be an injury to defendant directly traceable to the act of the plaintiff.

On Appeal from the Court of Common Pleas of Hamilton county.

SWING, J.

This case is here on appeal. It is an action by plaintiff for an injunction to restrain defendant from obstructing the roadway which plaintiff claims the right

---

* The judgment in this case was affirmed by the Supreme Court, 55 O. S., 662; uureported; for decision of the common pleas see 11 Dec. Re., 743; for a later decision of the circuit court, as to right of way and effect of this adjudication, and holding that proceedings in error in this case did not bar the subsequent action see 7 Circ. Dec., 178. This decision is followed, as to easements, by the same court, in Sach v. Cordes, 5 Circ. Dec., 67.

to have over defendant's land. Defendants in an answer and cross-petition ask that plaintiff's right to said roadway may be declared abandoned, and for damages. The material facts are substantially these:

The plaintiff is a corporation under a special act of the legislature of the state of Ohio. On January 27, 1833, Peter H. Kemper conveyed to plaintiff certain lands, as follows: Peter H. Kemper, in consideration of two thousand dollars, by D. Horn and others paid, hereby grants, bargains, sells and conveys unto the said Horn and others, trustees, and their successors and assigns forever, in trust for the use and benefit of the Methodist Protestant Church of Cincinnati, for a place of burial and other purposes. Then follows a description of the premises conveyed, being about nine acres, after which follows this: "Together with the use forever of a road thirty feet wide, to be opened from opposite the center of the above described tract or piece of land, through eastward, to the Cincinnati and Springfield turnpike." The habendum clause of the deed is same as the granting clause. Afterwards follows covenants of general warranty. Kemper, at the time, was owner of the lands conveyed and the lands over which the road was granted. The plaintiff has ever since owned said land. The defendant, Florence N. Laws, is the owner of the land in fee upon which the road is, and Harry L. Laws is her husband. Said land was used by said plaintiff from the time of its purchase, the —— day of ——, as a cemetery, since which time the bodies have been removed. The plaintiff has laid off said premises into lots and streets, and is now offering said lots for sale, one of the streets, called Maxwell avenue, commencing at the end of said road, and running to another of said streets, called Vernon Place, which street connects with the streets of Cincinnati on the south and of the village of Avondale on the north.

At the time of the conveyance by Kemper to plaintiff, this land was quite a distance outside of said city of Cincinnati, and the vicinity was not used for residence purposes; but at the present time it is within the city limits, and some of the most elegant residences of the city are in proximity, one of which is that of the defendants, which adjoins this tract and roadway. In the year ——, the city of Cincinnati prohibited any further interments in said cemetery, and by reason of this and the great value of the land undoubtedly, it was discontinued as a cemetery, and laid off into lots and streets; and having procured a decree of court authorizing the sale of said premises, said plaintiff is now selling and offering for sale said lots. Shortly after the purchase from Kemper, the plaintiff erected a fence around said cemetery, placing a gate or bar at the end of this roadway, which remained until replaced by the defendant. In the year 1885 plaintiff brought an action against defendant, alleging that said defendant Harry L. Laws was removing the fence and gate near said roadway, cutting away said roadway, and asking that he be enjoined from interfering with the same, the following being the prayer of said petition: "Wherefore plaintiff prays that said defendant Harry L. Laws may be forever enjoined from cutting away said road, and from excavating the same, and from obstructing said road by gates or otherwise, and from cutting off the means of access of plaintiff to said property, and from interfering with the use and occupation of said road by plaintiff, and for other and proper relief."

No trial was had on the merits of said petition, but the controversy was settled by the parties by the following agreement:

## HAMILTON COUNTY COMMON PLEAS COURT.

73024. The Methodist Protestant Church of Cincinnati v. Harry L. Laws; agreement.

It is hereby understood and agreed by and between the above named parties, as follows: That said defendant will grade the road referred to in the petition herein, so that it will slope continuously upward from the pike, back to the east line of plaintiff's property, and will put the same in good order and condition as a roadway, by macadamizing or graveling or otherwise; that the depth of the cut in said road shall not exceed three feet and eight inches below the present surface at the east line of plaintiff's property. That defendant will cut the road thirty feet wide into plaintiff's property, from its east line as far as may be necessary or required to connect by easy grade with the first named road, and will slope the sides of the cut, and will gravel or macadamize said road, and place the dirt from said cut where desired by plaintiff, and that he will reset the posts, and replace the gate at the entrance to plaintiff's property. All of said work on plaintiff's property to be done to the satisfaction of plaintiff. In consideration of said agreement, and the performance thereof by defendant, said plaintiff will dismiss the above entitled action at defendant's cost.

May 13th, 1885.

(Signed,)

S. H. BEARD,
President of the Board of Trustees.
W. F. LAMMAN,
H. M. HARBAUGH,
HARRY L. LAWS.

The case was fully and ably argued by either side, both orally and by brief, and we have examined the questions presented with a good deal of interest. While we have gone over the authorities cited and others, it will not be our purpose in deciding the case to review the authorities, but rather to state what we deem the law to be gathered from them.

Plaintiff's right is founded in a grant, and what that right is must be determined by the intention of the parties as gathered from the terms of the grant, taken in connection with the circumstances that surrounded the parties at the time. We think it well to consider first what the plaintiff took by the grant. We see no room to doubt but what plaintiff took a fee simple title to the premises conveyed by Kemper.

In the case of *Watterson* v. *Ury,* 3 C. D., 171, the court makes the following statements:

"It is to be observed that no condition in terms is annexed to this grant, nor is there any clause providing for forfeiture to re-enter, nor any stipulation that the deed shall be void in any event, nor does the deed on its face purport to have been made solely in consideration of anything to be done, or for the accomplishment of a specific purpose, on the fulfillment of which the grant is made to depend, and as no condition the violation of which would operate as a forfeiture, and result in a reversion, can be fairly implied from the terms of the deed, the claims of defendant in that behalf must fail." Citing Ayer v. Emery, 14 Allen, 70.

These words, we think, may be appropriately used in connection with this deed, and while this deed contains words indicating the purpose for which the premises are to be used, there are no words indicating that the grant is to be void and the property is to revert if the declared purpose is not carried out. So that in our judgment the plaintiff took a fee-simple title without reference to whether the words "and all other purposes" used by this deed should be construed to mean, "and all other purposes, or purposes of a like nature."

The grant of the way is as follows: "Together, with the use forever of a road thirty feet wide, to be opened from opposite the center of the above described tract or piece of land, through eastward to the Cincinnati and Springfield turnpike."

Our first impression on reading this grant, was to gather from it that the way was to be an open way; but we are now satisfied that such was not the meaning. The verb and not the adjective are used, and the words as here used are equivalent, to be located, to be laid out, to run, to be opened up from one point to another. It does not qualify or in any way limit the roadway except as a point from, and across to a point to which it shall be located. If the parties had intended that the road should be an open way, we can see no reason why they should not have used some words to qualify the word road, such as an open road, or a road to remain open, a road to be free from gates or bars, or some equivalent expression. Instead, they use a verb, indicating that something was to be done in connection with the road, and that something was an act, and that act was the location of the road, rather than any quality that the road should have after its location. The road was to be opened but once; it was not to remain open. It was not to be an open road. There would be no sense, grammar or reason for such a construction, but it seems to us that such a construction must be in accordance with the intention of the parties, when the words are considered in connection with the surrounding circumstances, and the subsequent conduct of the parties in relation to the subject-matter, and the court should look at this.

Goddard on Easements, at page 275, says:

"If the easement has been granted by deed, the ordinary rule which governs in similar cases prevails, namely, that the rights of the parties must be ascertained from the words of the deed, and the extent of the easement cannot be determined from any other source. But, though this is the general rule, it is subject to the modification, that surrounding circumstances may be taken in consideration in order to ascertain the intention of the par-

ties to the deed, for it might operate very unjustly if the grant should be construed in its widest sense irrespective of the condition of things to which it had reference when it was made."

This land was purchased for cemetery purposes. It is undoubtedly true that at the time there was no other intention but that it would be used for a cemetery for all time. The parties at that time could not have contemplated that within sixty years it would be in the center of a thickly populated city, surrounded by streets and magnificent residences. It was to be a place of residence for the dead, and not for the living.

We have never heard of an open road leading into a cemetery. At least one end of this road must have been intended to be closed; and so it was, and it remained so until it was torn down by plaintiff, and it evidently would so remain but for the fact that the plaintiff desires to put the ground to a use other than the one contemplated, so that it seems to us, that not only do the words of the deed show an intention to create an open way, but the surrounding circumstances indicate that none was contemplated or desired.

What the law is in regard to gates when the grant contains no words of inhibition, is thus stated by Goddard, at page 330:

"Questions often arise whether the owner of a private way through another's land has the right to an entirely free and open way the whole distance, or whether the land owner may lawfully erect gates or bars at the termini of the way, either where it enters the highway, or at the opposite end. Obviously the burden on the owner of the servient estate is much greater if he either leave the way entirely open for the inroads of other beasts, and the escape of his own, or else fence both sides of the way for its entire length. On the other hand, the use of the way to the owner thereof is not so convenient if he must delay to open and close the gates, or remove and replace bars. When ways are created by express grant, this matter is frequently provided for by the grant itself, but in cases of a general grant, express or implied, or of necessity, the rule seems to be that the gates or bars may be lawfully erected at the termini of such way without any liability for obstructing the way, and the way owner would be liable in trespass for wrongfully removing the same. The great preponderance of convenience to the land owner over the slight inconvenience to the way owner seems to make it reasonable in the eyes of the law that such should be the rule; and if the land owner may rightfully erect and continue such quasi obstruction, without any liability, it seems to follow that the way owner must duly replace the same after he has passed, and if damage ensue, if there is neglect of this duty, he would be liable to the owner therefor. This burden on the way owner would, of course, be much increased if the land owner might erect such gates and bars, not only at the termini of the way, but also wherever it passes through his adjoining lots, separated from each other by a fence. This point does not seem to have been judicially settled, but apparently it would be governed by the same principles as before, namely: Was it reasonable, under all the circumstances, to have so many gates and bars on such a way. A practical question always for the jury."

Washburn on Easements at page 255, says:

"And where one grants a right of way across his land, he may shut the termini of the same by gates, which the grantee must open and close when using the same, unless an open way is expressly granted. Nor does a grant of way across one's land imply that it is to be open and free from gates, unless the nature of the use to which it is to be applied indicates thereby that it should be open and unobstructed. And where the grant was of the free and unobstructed way, it was held that the owner of the land might maintain gates across it unless this would be inconsistent with the purposes for which the way was granted. And in another case the court say, that the right to maintain gates or bars at either end of a private way by the land owner exists unless the same unreasonably and unnecessarily obstructed the owner of the way from the use of it, where there is nothing in the terms of the grant to restrict this."

If our construction of this grant is correct, it is clear that the defendant has the right to maintain the gate in dispute. But assuming that we are wrong in our interpretation of this grant, there is another reason why, in our judgment, the defendant may maintain this gate. It seems to us, if ever the plaintiff had this way free from the obstruction of gates, it has lost it by reason of surrender or abandonment. The law applicable to this question is laid down by Washburn, commencing at page 707 *et seq.* Washburn on Real Property, vol. 2, page 355 *et seq.*, and Goddard, page 447 *et seq.* A party may abandon an easement in

various ways, and whether it is abandoned, under the common law practice, is always a question of fact for the jury. It follows, as a matter of course, that a party may abandon any portion of an easement. If, in this case, the plaintiff had a right to an open way, it could abandon that, and only have the right to a way with gates. An easement founded in grant is not abandoned by mere non-user, whereas an easement founded in prescription may be. When taken in connection with other circumstances, whether there has been an abandonment is determined by the intention of the parties, taken in connection with and considered with reference to the acts of the parties.

In a suit brought by plaintiff against said defendant in 1885, the plaintiff asked that said Laws be restrained from obstructing said road by gates or otherwise, as heretofore stated. The right of defendant to obstruct said road by gates was therefore a matter in dispute. This dispute was settled by the parties, by entering into the agreement heretofore set out. Under this agreement Laws graded and macadamized the road, erected posts, and a gate. He was induced to do so by reason of this agreement; having acted on it, and expended his money, it seems to us that plaintiff is estopped from denying its force and effect, which certainly was that the posts and gates should remain. There was no limitation as to the time the gate and the posts were to remain, and the presumption is that they were to be permanent.

But there is still another reason why we think the defendant has a right to maintain this gate. The law undoubtedly in America is, that one having an easement by grant may assign that easement with the dominant estate, and the easement goes to every portion of the dominant estate assigned, however many the tenants may be, but it can go no further. No stranger to the estate may take it.

"It appears to us that the right of way appurtenant to land is appurtenant to all and every part of the land, and that upon division of the land to which the right of way is attached, a right of way will exist in the owner of each of the parts in which it is divided." 55 Mass., 1; Serg. & R., 229.

"No man can impose a new restriction or burden on his neighbor by his own act, and for this reason. An owner of an easement cannot, by altering his dominant tenement, increase his right." Goddard, 280.

"If the owner of an easement exceeds his right for enjoyment, or does anything which would after long use produce an increased right, the servient owner may in all cases obstruct or prevent the excessive enjoyment." Goddard, 281.

"You cannot alter the condition of either the dominant or servient tenement." Washburn on Easements, 701, Part 5.

"A right of way appurtenant to the dominant tenement can be used only for the purpose of passing to or from their tenement. It cannot be used for any purpose unconnected with the enjoyment of the dominant tenement, neither can it be assigned by him to a stranger, and so be made a right in gross. Nor can he license a stranger to use the way when he is not going to and from the dominant tenement." Goddard, 321.

"The law is perfectly settled, if one man has a right of way over land of another, to go to a particular place, he can not use it for the purpose of going to a place beyond it, because the servient tenant is only subject to a certain inconvenience." Mallins, V. C. I. R., 17 Eq., page 167.

The plaintiff may therefore divide its estate as it has done into forty different parts, and each part may use this way, if owned by a separate owner. The burden is increased, but it is not of a different kind. It is within the terms and contemplation of the grant. It is not a new burden. But the plaintiff cannot license or invite a stranger to go upon this way. That would be imposing an additional or new burden. If he cannot do it directly, can he do it indirectly? The plaintiff has platted and laid out a public street which ends at the mouth of this way, and is about to grade and macadamize the same, and to open it up to the public, and it is in a comparatively thickly settled portion of that part of the city, and which will rapidly increase in population. The result must necessarily be, that by means of this street, strangers—that is, the public generally—will be invited and led

to go upon this way, if it is to be an open way, and they will be trespassers. **It** will be an injury to the defendant directly traceable to the act of the plaintiff.

Can there be any question but what the making and opening of this street to the public connected with this right of way will be an invitation to the public generally who may be upon the street to go forth if they desire and use this roadway? Granted that the plaintiff may subdivide this land into lots, and granted that it may locate and open up streets, as they have done, but they have done something more. They have invited the public traveling over this street to go further and use this private way. We have the fact that the street was so located; and that the plaintiff is here claiming an open way, is proof that the plaintiff intended that the street and roadway should be used together, and that not only by the lot owners, but by the public generally. The conduct of the plaintiff is not explainable otherwise. This would be an irreparable injury to the defendant. He could not protect himself against the constant and repeated trespasses of the public. Manifestly the only way to protect the defendant from the public is not to let the public go on the way. If, instead of trying to keep the public off, the plaintiff is asking the public on, the defendant must be permitted to do whatever is necessary to protect the way from being improperly used. The means used for this purpose has always been gates, and this may be sufficient in this case. If the defendant is satisfied with gates, certainly the plaintiff cannot complain, for it seems to us that the defendant should be protected from the wrongful use of this way by adequate means. If the gates are not sufficient, then the way may be closed altogether.

As bearing on this last reason why the gates cannot be maintained, we have been called especially to the case of Tappling v. Jones, 11 House of Lords, 290. This case must now be the leading case in England on the question therein decided, for up to the time of its decision, it was not the law of England. In this case Jones brought his action against Tappling claiming a right for light and air through certain ancient windows, and alleging a wrongful obstruction of the same by Tappling. The facts were that Jones, having the right to certain ancient windows, proceeded to enlarge these, and to open up other windows. Tappling thereupon built a wall so as to obstruct the ancient windows as enlarged and the new ones. Thereupon Jones filled up the new windows, and restored the old ones to their former size. In the common pleas the judges were divided in opinion, and upon error in the Exchequer Chamber there was a division of opinion among the judges. But the judgment was for Jones. Thereupon the case went to the House of Lords, where the Lord Chancellor (Westbury) and two of the Lord Justices delivered opinions affirming the judgment below. In coming to their opinion they found it necessary to place their judgment on a different ground from that of the Court of Exchequer (that court having decided that when Jones had removed his new windows and restored the old ones, that Tappling could not maintain his wall) also to overrule the case of Renshaw v. Bean, 18 Q. B., 112, and Hutchinson v. Copestake, 8 C. B., N. S. 102.

It might seem presumptuous for us to criticise this decision of the highest court of England, were it not for the fact that the judgments of their own high court stand as a criticism on it. While this decision may be the law, we think it clear that it is unsatisfactory in this: that if the one having obtained a right to maintain a window, he may by this go on and add to his right, and by his act his neighbor is powerless to help himself. He is bound hand and foot, and he can then proceed to rob him of his rights. And they do this from two reasons. First, they say that the right to ancient lights is by virtue of an act of Parliament and is indefeasible; and, second, that there is no wrong in opening as many lights as one chooses, and that the only way that the adjoining land owner can protect this right from ripening into the further right of preventing the adjoining land owner from obstructing is for him to build a wall and shut it out. But this cannot be done from the nature of the buildings, if there is already a right to light below

the new ones. We think that this decision was forced upon the court by reason of the necessity of the peculiar circumstances. But we see no such difficulty here, and we think that the court can do justice to the parties. We say to plaintiff, you do wrong in using your property so as to invite injury to defendant. We will protect the defendant in his right, in the first place, by requiring gates. If this should not prove adequate, then, whatever is necessary should be done.

It follows from this that the relief asked by plaintiff must be refused, and its petition dismissed.

Coming now to consider defendant's cross-petition for an order restraining plaintiff from hauling stone for the construction of said streets, and for a decree declaring said way abandoned, and for damages for the removal of said gate and posts, we have this to say in connection with what has been said. In the first place, plaintiff being the owner in fee of the premises, has a right to lay the same off into lots and streets, and they have a right to use this way in connection with their property, and as long as they do not wilfully misuse this way, we see no reason why they may be prohibited from using it in connection with its land. As to whether the way may be abandoned or not, plaintiff certainly has showed no intention to abandon the way. What we find is, that they attempted to enlarge their right to it. What they have done cannot justify the court in declaring the way abandoned, for *non constat* that the gate may prove to be sufficient to protect defendant from plaintiff's wrongful act. Whether this shall prove adequate remains to be seen. For this reason defendant's cross-petition should be dismissed without prejudice to a further action.

As to the defendant's damage in removing the fence and gates, he is entitled to whatever amount was proven on the trial. Plaintiff should pay the costs.

Matthews & Cleveland, and Arthur & McNeil, for plaintiff.

Ramsey, Maxwell & Ramsey, for defendant.