**WINDSOR et, Plaintiffs-Appellee, v. LANE DEVELOPMENT CO. et, Defendants-Appellant.**

Ohio Appeals, Tenth District, Franklin County.

No. 5860. Decided December 8, 1958.

170

Carlisle O. Dolling, Thomas W. Maxson, for plaintiffs-appellee.
Saxbe, Boyd & Prine, for defendants-appellant.

(GRIFFITH, J, of the Seventh District, YOUNGER and GUERNSEY, JJ, of the Third District, sitting by designation in the Tenth District.)

## OPINION

By GUERNSEY, J.

Prior to June 28, 1950, defendant, The Lane Development Company, a corporation and appellant herein, owned the center portion of a fourteen acre tract of land which is bounded on the north by Lane Ave., and in conjunction with the owners of the balance of the tract had developed same as a modern shopping center, complete with store buildings, parking areas, and with drives which provided ingress and

egress at several points on Lane Avenue. Prior to said date and prior to April 17, 1924, the fourteen acres were bounded on the west, south and east by the corporate limits of the City of Upper Arlington, but lay outside of the corporation. On April 17, 1924, there was recorded in the office of the Recorder of Franklin County, a duly dedicated and accepted plat of the University Addition to the City of Upper Arlington. Included within the bounds of the plat was a duly dedicated street named Berkshire Road, which, in this area, constitutes the first street south of and parallel to Lane Avenue. On the north side of and abutting Berkshire Road was platted a single row of lots, each of approximately the same frontage and depth, interrupted at a point about half way from east to west by a tract of land designated "Reserve B" of the same depth as the lots. Reserve B, however, has a frontage on Berkshire Road of fifty feet, whereas the platted lots each have a frontage of at least sixty feet. Reserve B is located so as to constitute a northerly extension of Harford Road, if extended, the said Road, as platted and as existing, being fifty feet in width and perpendicular to, and terminating at its intersection with Berkshire Road. The northerly boundary of five of the lots was common with the corporation line and a portion of the south boundary of the fourteen acre tract. A tract of land designated "Reserve D" was platted between the balance of the south boundary of the fourteen acre tract and the north boundary of fifteen other lots and Reserve B. The only descriptive language on the plat pertaining to the two reserves was that "the 'reserves' are for such use as shall be hereafter determined."

On September 14, 1927, a zoning ordinance was adopted by the then Village of Upper Arlington which, among other things, classified "any and all parts of the said Village, and all lots and lands lying therein," not otherwise classified, as "Class I or Single House Districts." It is stipulated that this ordinance, as amended constitutes the zoning ordinance of the City of Upper Arlington effective at the time of this action.

On June 28, 1950, defendant acquired title to the land included in Reserve B together with that portion of the land included in Reserve D lying directly north of and contiguous to the north boundary of Reserve B and south of and contiguous to the south boundary of the fourteen acre tract, Reserve B measuring fifty feet, east and west, by 138.5 feet, north and south, and the portion of Reserve D measuring fifty feet, east and west, by 66.24 feet, north and south. The President of defendant corporation testified (R. 62) that the corporation bought Reserve B and the portion of Reserve D "to provide ingress and egress and a better safety position from a traffic standpoint" "from any place to Lane Shopping Center."

Although the date is not in evidence, after the shopping center was constructed and its use established, the fourteen acre tract of land, together with other land, was annexed to the City of Upper Arlington, and under the terms of the zoning ordinance became zoned, by virtue of such annexation, as a "Class I of Single Family House District," and its use for commercial purposes has continued as a non-conforming use.

After annexation, on July 5, 1957, defendant applied for and received

from the City Building Inspector a permit to cut the curb, with no length of cut specified, in front of Reserve B along the north edge of the paved constructed portion of Berkshire Road. Defendant then cut the curb and constructed a paved driveway, approximately thirty-seven feet wide, extending from the north edge of the paved portion of Berkshire Road to the paved parking and driveway area of the shopping center located on the fourteen acre tract. Defendant has at no time dedicated said driveway as a public street and has retained ownership and control of same to date. Following completion of the driveway vehicles, in increasing numbers, used the driveway as a means of ingress and egress to and from that part of the fourteen acre tract owned by defendant, and, it is stipulated, at least a portion of said use of the driveway "was for the purpose of conducting business with the merchants located in the Lane Shopping Center."

Plaintiffs, owners of property neighboring or adjacent to Reserves B and D, filed a suit in the Common Pleas Court to permanently enjoin the defendant from "using Reserve 'B' and Reserve 'D' as a driveway or street." It is undisputed in evidence that the continued use of the driveway as a means of ingress to and egress from the Lane Shopping Center will cause plaintiffs damage by reducing the market value of their respective properties, the greatest reduction occurring to those properties adjacent to the driveway and the reduction decreasing as the distance to the affected property increases.

The lower court permanently enjoined the defendant from "using the wide driveway or street on Reserves 'B' and 'D' of the University Addition of the City of Upper Arlington for purposes of trade, so long as Ordinance 219 as now enacted, remains in full force and effect." From said judgment an appeal on questions of law and fact was taken to this Court and the cause was heard de novo.

It appears that the zoning ordinance of Upper Arlington, including all amendments thereto, is voluminous but the parties have agreed in the pleadings to part thereof and have stipulated as to other portions. We will not consider any part of the ordinance which does not thus appear in the record.

Defendant makes various contentions for the refusal of injunctive relief, each of which we will consider and dispose of.

1. Defendant first contends that the zoning ordinance violates **Sections 1** and **16, Article I, Ohio Constitution,** because "it prohibits all driveways and many other necessary and reasonable uses" and thereby is an unreasonable exercise of the police power having no relation to the public welfare.

To the extent pertinent Sections 4 and 5 of the zoning ordinance provide:

"**Section 4.** No building or other structure or premises shall be erected, altered or used in any district for any kind or class of trade, industry, residence or other purpose other than such as are specifically permitted in such district . . ."

"**Section 5.** In Class I Districts single family dwelling houses only (with necessary proper and approved out buildings and fences) shall be permitted . . ."

It is readily apparent from a reading of Section 5 that a private garage for a family is permitted to be constructed and used as an out building to a single family dwelling house in a Class I residential district. Its use necessarily encompasses the construction and use of a driveway for access thereto. We are of the opinion therefore that the ordinance does not prohibit the construction and use of a driveway for such purpose nor that it prohibits any other thing customarily incidental or subordinate to single family residential use of said premises.

If for no other reason, by reason of the basic rule that a zoning ordinance must be construed in favor of the free use of property, and in the absence of words specifically limiting or prohibiting the incidental or subordinate use, it follows that by inference, if not by words, a zoning ordinance permits all uses which are customarily incidental and subordinate to the principal use specifically authorized. Sec. 226 (18)c, Municipal Corporations, 62 C. J. S: 492. Defendant's contention in this respect is therefore without merit.

2. Defendant's second contention is that the zoning ordinance constitutes an unconstitutional taking of private property without compensation as by the language of Section 5b Reserve B could not be used even for the construction of a residence.

Section 5b of the ordinance, to the extent pertinent, reads:

"In Class I Districts, no house shall be erected on any lot or parcel of land having less than seventy-five feet of frontage on the abutting street and containing less than nine thousand square feet * * *, provided that one single family dwelling may be erected on any **numbered** lot in any subdivision heretofore legally platted and now on record in the office of the County Recorder, having a frontage of not less than fifty feet and containing not less than seven thousand square feet. . ." (Emphasis added.)

Defendant claims that this constitutes an absolute prohibition of the construction of a home on Reserve B because it has only a fifty foot frontage, is not a numbered lot, and contains only 6,925 square feet, and that such prohibition, coupled with the fact that other sections of the zoning ordinance permit only residential use, effectively deprives the defendant of all use of Reserve B.

Only part of this ordinance is before this Court. We do not know, except for indefinite statements of counsel, that the ordinance as a whole contains no provision for the relief of cases of hardship. The evidence is that the defendant has never applied for permission to construct a dwelling house on this parcel of land used by itself or in conjunction with that part of Reserve D owned by defendant, and therefore that defendant has never been denied permission. In the event that defendant were denied permission, and the ordinance had no provision for the relief of hardship, a proper court, if not granting other relief, might conclude that the operation of Section 5b would be unconstitutional under such circumstances. However, it would not necessarily follow that the other sections of the ordinance creating the residential classification would likewise be unconstitutional in their operation.

There being no refusal of a permit to construct a house, and the entire ordinance not being before this Court for its consideration, this

Court cannot conclude that the operation of Sections 4, 5 and 5b is unconstitutional in the respect herein claimed by defendant.

3. Defendant next contends that the ordinance violates **Section 19, Article I, Ohio Constitution,** because it denies the right of ingress to and egress from defendant's property without defendant receiving compensation therefor.

Most authorities cited by defendant in support of his contention are related to the situation where an abutting property owner was absolutely denied ingress and egress or the limitation on ingress and egress was so substantial as to constitute a taking. These cases, and defendant in its brief, recognize the principle that the legislature may, in the lawful exercise of police power, regulate the right of ingress and egress without compensation, so long as there is no denial of ingress and egress. In a case decided by the Supreme Court, in 1952, **Northern Boiler Co. v. David, 157 Oh St 416,** Judge Matthias stated in his opinion:

"An abutting owner, **subject to municipal regulation,** has the right to construct a driveway from his property for a **necessary** outlet into the traveled portion of the highway provided he does not unreasonably interfere with the public use of the street and **provided further the construction is not forbidden by statute or ordinance.** And even though a permit is required by statute to construct a driveway into a boulevard this does not mean that there can be an absolute denial to an abutting owner of a right to construct such driveway . . .

"The plaintiff, therefore, being the owner of property abutting on the street in question, has a right of access thereto including a right, if necessary, to cut the curb and construct a driveway to provide ingress and egress, **subject to the reasonable and lawful regulations which may be presented by ordinance** of the council . . .

\*　　　　\*　　　　\*　　　　\*　　　　\*

"The plaintiff has an incorporeal hereditament consisting of a right of access **which can be regulated** only **by the lawful exercise of the police power of the city.** Such regulation must be provided by ordinance in which reasonable standards consistent with the needs of the public are established." (Emphasis added.)

Although we do not claim that the law of Ohio is such as to permit the absolute denial of access under the police power we note that in the case of Wood v. City of Richmond, 138 S. E., 560, the Supreme Court of Appeals of Virginia in upholding a zoning ordinance, effected the denial to a filling station owner of the use of a driveway which he had constructed pursuant to a permit but in contravention of the zoning ordinance, and in considering the effect of the Constitution of Virginia and of Article 14, Sec. 1, Constitution of the United States said:

"While conceding the correctness of the proposition that an abutter has an easement in the public road which amounts to a property right, we are of the opinion that **the exercise of this right is subordinate to the right of the municipality, derived by legislative authority, to so control the use of the streets as to promote the safety, comfort, health, and general welfare of the public.**" (Emphasis added.)

The zoning ordinance before us does not purport to be an absolute denial of ingress and egress. Its effect is to limit ingress to and egress

from property in a Class I residential zone to ingress and egress for single family dwelling purposes only. It is consistent with and promotes the safety, comfort, health and general welfare of the public to limit access to a street from lots zoned for residential use to the type of traffic incident only to such use. Streets in residential neighborhoods are ordinarily neither physically adequate to handle the volume of traffic generated by commercial use nor are they usually equipped with traffic controls sufficient to protect the general public against the hazards of such traffic. A limitation of use of a property cannot and does not prohibit ingress and egress for the purpose for which the property may be used, but of necessity prohibits ingress to and egress from the property for any purpose for which the property may not be used. Such regulation of ingress and egress in any residential neighborhood is a reasonable and lawful regulation no greater nor more serious in its application to property rights than is any zoning ordinance regulating the use of property, and constitutes a constitutional exercise of police power.

Prior to its purchase of Reserve B and part of Reserve D defendant had no right of ingress to and egress from its shopping center to Berkshire Road. Its acquisition of land which abutted Berkshire Road could not, under the circumstances of this case, enlarge its rights. Defendant was protected in its constitutional right of ingress to and egress from the property so acquired for the purposes for which it was zoned, but did not thus acquire a constitutional, or any other right, of ingress to and egress from land used for a non-conforming commercial purpose over land zoned for a more restrictive use.

Defendant's contention of unconstitutionality in this respect is without merit.

4. Defendant contends that the zoning ordinance adopted in 1927 did not impose a residential classification on Reserve B for the reason that the subdividers of the University Addition, by their plat recorded in 1924, showed their intention that Reserve B was to constitute an extension of Harford Road, and thereby established a non-conforming use which excepted such land from the residential classification of the zoning ordinance.

In this contention defendant ignores the fact that Reserve D is so located on the plat as to be entirely inconsistent with use as the extension of any street, and since Reserve D lies between Reserve B and defendant's shopping center it would serve to bar ingress and egress over Reserve B to and from the shopping center. Moreover, the statement on the plat that "the 'reserves' are for such use as shall be hereafter determined," plainly expresses the intention of the subdividers that determination of use was to be postponed. This is entirely inconsistent with and bars the establishment in 1924 of a non-conforming use merely by the platting of the reserves, and the surveying and legal action taken in connection therewith. Nor did the subdividers or any of their successors in title, so far as appears in the record, ever take any other action between 1924 and 1927 to establish a non-conforming use on Reserve B.

As was determined by the Supreme Court in the case of **Smith v. Juillerat, 161 Oh St 424,** mere intention or contemplation of use is insufficient to establish a non-conforming use. In this case we have no evidence of any probative value either of intention of use or of actual use, existing or continuing at and after the time of the adoption of the zoning ordinance in 1927, on which defendant can ground his claim of non-conforming use.

Its contention of same is therefore 'without merit.

5. Defendant next contends that the mere use of Reserves B and D for ingress to and egress from defendant's shopping center is not a use for trade, that ingress and egress in itself is not a use having any residential, commercial or industrial character.

On the facts of this case we cannot agree with defendant's contention. It was stipulated by the parties that at least a portion of the use of the driveway "was for the purpose of conducting business with the merchants located in the Lane Shopping Center," and the undisputed evidence was that from the time the driveway was opened cars were using the driveway in increasing volume. It can hardly be argued other than that defendant opened the driveway to provide easier and safer ingress to its store buildings and to thereby benefit a commercial use. The patronage of the business places would no doubt also be encouraged by the fact that the customers knew that once they had completed their shopping the reverse was also true, that for them there now existed increased ease and safety of egress.

There is no explicit authority in Ohio on the question of whether the use of driveway in the manner in which this was used would constitute commercial use, but there is substantial sound authority in other states where it has been so held, and where such use was also held violative of restrictive deed covenants or zoning legislation.

An earlier case pertaining to the use of part of a lot, restricted by deed to residential use, is the case of Laughlin v. Wagner, 244 S. W., 475, decided by the Supreme Court of Tennessee in 1922. The Court said in its opinion:

"The decree, being reviewed, enjoins the defendants from making use of the Belvedere side of the lot as a means of ingress to the drug store and other buildings on the other lots, and from making any use whatever other than a means of ingress and egress to buildings used purely for residential purposes.

      *        *        *        *

"We think a fair interpretation of the restrictive clause in question would permit any use of the Belvedere side of the street which would be consistent with its use for residential purposes only. The clause does not require that a dwelling house shall be erected on the lot, and it is not intended to prohibit all uses thereof unless the house is built. * * * On the other hand, whatever the character or form of the building, it would be permissible to use it for residential purposes, and if there be no building at all, it could be used for purposes consistent with and incident to its use for residential purposes.

"From this interpretation it follows that the Belvedere side of this lot could not be made use of in such a way as that the manifest purpose

would be to serve the business houses adjacent to it. For example, it could not be used as affording an intentional passageway or entrance into the business house. Any structure, whether strictly a house or not, such as a concrete driveway, which devotes the use of the property to the carrying on of a business, would be violative of this clause, but the use of the lot for decorative purposes, such as flower beds or as a walkway on the lot itself, would not violate the manifest intent and purpose of this clause.

"In other words, any use of this lot which might be reasonably incident to its use for residential purposes is permissible, but it is not permissible to put the lot into service as an incident to the business houses on the adjacent portion of the lot."

Another involving covenants in a deed restricting the use of a lot to residential use, decided by the Supreme Court of Errors of Connecticut in 1925, is the case of Mellitz v. Sunfield Co., 129 A., 228. The Court said in its opinion:

". . . Defendant is conducting a store for the sale of automobile accessories on lot 2, and is using lots 2 and 3 for its gasoline station for the sale of gasoline, oil, and grease. Upon lot 1 defendant has constructed a crushed stone driveway which it uses in connection with its business conducted by it on lots 2 and 3 adjoining . . . which furnishes the only means of access from the north on Ellsworth street to its business, and the only means of egress for automobiles entering lot 3 from the south . . . The use defendant makes of Lot 1 makes of it an integral and valuable part of its business. It was a use for a business, and not a residential purpose. If defendant had erected a store covering lot 2, and had made the approaches to the store across lot 1, and all deliveries to or from the store in its own trucks as well as its patrons' conveyances were from lot 1, could it be said that lot 1 was not used for business purposes because no building had been erected thereon? . . . We think the plaintiff was entitled to an injunction restraining the defendant from using lot 1 for any purpose other than that specified in the restriction contained in the conveyance . . ."

In Village of Great Neck Estates v. Bemak & Lehman, 128 Misc. Rep., 441, 218 N. Y. S., 359, and 228 N. Y. S., 917, affd. 162 N. E., 562, it appeared that defendant Schlosser was owner of a public garage situated entirely outside the village, that defendants Bemak were owners of, and occupied for a private residence property within the village zoned for residential use and abutting the rear of Schlosser's garage, there being located on the residential property a private one car garage with driveway. Prior to the commencement of the action entrance was made in the rear of Schlosser's garage and permission given him by Bemaks to use their driveway for the convenience of Schlosser's customers which driveway they thereafter used as an additional entrance for ingress and egress.

When the village sought to enjoin the use of the drive-way the trial court found for defendants which judgment was reversed by the Appellate Division of the Supreme Court. Upon appeal the Court of Appeals of New York by memorandum opinion affirmed judgment in favor of plaintiff and recited:

"The action was to restrain the defendants from using certain

premises situated in a residence "C" district in the village of Great Neck Estates, and owned by the defendants Isaac J. and Josephine K. Bemak, **for business purposes,** in violation of the zoning ordinance of the village." (Emphasis added.)

In the case of Town of Brookline v. Co-Ray Realty Co., 93 N. E. 2d. 581, the Supreme Judicial Court of Massachusetts held that the proposed use of land in a single residence district in the Town of Brookline as a rear yard and service entrance for an apartment house under the same ownership located on adjoining land in Boston would be violative of the Brookline zoning by-law, and the incidental presence of a lawn or shrubs, trees and flowers would not transform the rear yard and service entrance into the permitted use of a "park" or "ornamental grounds."

In the case of City of Yonkers v. Rentways, Inc., 109 N. E. 2d, 597, the Court of Appeals of New York, cited the latter two cases, and allowed an injunction against the use of a lot in a district zoned for residential use as a means of ingress to and egress from the second story of a garage building located on an adjoining lot under the same ownership, stating in its opinion:

"The power to regulate 'trades and industries' obviously includes the power to regulate any part or portion of a trade or industry. And it can hardly be denied that the day in, day out moving of vehicles across private land from a public street to the shelter of a garage building is part of the business of garaging vehicles. Of necessity, then, the use of Lot 20 as an integral and essential part of the business conducted on Lot 46 may be enjoined as nonresidential."

\* \* \* \* \*

"Nor does the ordinance under consideration confiscate defendant's property or otherwise offend against constitutional guarantees . . . Completely absent is any showing that the second floor's present use could not be continued by building a passageway or ramp within or alongside of the structure so as to permit access to that floor from Riverdale Avenue or, if such construction were impossible, that such floor could not be converted to some other profitable use." It will be noted that in each of these cases the attempted ingress and egress was over property more limited in its permitted use than was the property to which the ingress and egress was to benefit and none of these courts held that the denial of ingress and egress for the purpose in question constituted an unconstitutional prohibition or confiscation of the right of ingress and egress. Of these decisions we approve.

For these reasons we are of the opinion that the day to day use of the driveway on Reserves B and D for ingress and egress over said reserves to and from defendant's shopping center by the customers thereof and for their benefit and the benefit of said shopping center constituted a commercial use of said Reserves.

Defendant's contention that such use was not a commercial use or use for trade is therefore without merit.

6. Defendant's last contention is that the wording of Section 2a of the zoning ordinance in question is not effective to include Reserves B and D within the classification of a Class 1 or single house district. In the amended form in which it existed at the time of the com-

mencement of this action, this section provides that "all lots and lands lying within the corporate limits of said City, as presently existing or as the same may exist in the future by reason of annexation or other changes, not specifically herein described as Class II, Class II-A, Class III or Class IV districts, shall constitute Class I districts."

This Court is of the opinion that if the Reserves in question are not "lots" they of necessity constitute "lands" and come within the clear provisions of the zoning ordinance restricting their use to Class I residential use.

For the reasons stated herein this Court finds that the driveway constructed by defendant on Reserves B and D may be used for ingress and egress to and from said Reserves for residential purposes only, that for said driveway to be used in the manner in which defendant contemplated, and in the manner in which it was used before this action, as a means of ingress and egress over said Reserves to and from defendant's shopping center would constitute a use of the Reserves for commercial or trade purposes contrary to the limitation to Class I residential use as provided by the zoning ordinance of the City of Upper Arlington, and that the defendant, its successors and assigns, should be permanently enjoined from using said driveway, or any part thereof, except for ingress to and egress from Reserve B and Reserve D for residential purposes only, and should be further permanently enjoined from using said driveway as a means of ingress to and egress from that portion of defendant's property not originally included in the University Addition so long as the same is not used for Class I residential purposes, or until the said Reserves shall be rezoned to permit commercial or trade use, or until said driveway shall be duly and legally dedicated and accepted as a public street.

GRIFFITH, PJ, concurs.
YOUNGER, J, dissents.

### WINDSOR et, Plaintiff-Appellee, v. LANE DEVELOPMENT CO. et, Defendants-Appellant.

TO THE CLERK:

In the above entitled action, enter the following minutes on the trial docket, as of date December 8, 1958, and at once inform all attorneys of record in said action, to-wit:

Upon the issues joined, the Court find that the driveway constructed by defendant on Reserves B and D may be used for ingress and egress to and from said Reserves for residential purposes only, that for said driveway to be used in the manner in which defendant contemplated, and in the manner in which it was used before this action, as a means of ingress and egress over said Reserves to and from defendant's shopping center would constitute a use of the Reserves for commercial or trade purposes contrary to the limitation to Class I residential use as provided by the zoning ordinance of the City of Upper Arlington, and that the defendant, its successors and assigns, should be permanently enjoined from using said driveway, or any part thereof, except for ingress to and

egress from Reserve B and Reserve D for residential purposes only and should be further permanently enjoined from using said driveway as a means of ingress to and egress from that portion of defendant's property not originally included in the University Addition so long as the same is not used for Class I residential purposes, or until the said Reserves shall be rezoned to permit commercial or trade use, or until said driveway shall be duly and legally dedicated and accepted as a public street.

Permanent injunction ordered accordingly. Costs to Defendant-Appellant. Cause remanded for execution.

Reasonable ground existed for appeal.

Exceptions saved.

YOUNGER, J, dissents.

(The above recitals are the minutes of this Court, and journal entry in conformity therewith must be filed by the successful party, in accordance with the rules of this Court.)