[No. 42364.    En Banc.    October 12, 1972.]

RAY H. ANDERSON et al., Appellants, v. ISLAND COUNTY, Respondent.

*Ted D. Zylstra* (of *Zylstra & Pitt*) and *James M. Hay,* for appellants.

*Edward C. Beeksma, Prosecuting Attorney,* and *Harold E. Baily,* for respondent.

FINLEY, J.—The plaintiffs, as neighboring property owners, are appealing from a judgment of the Island County Superior Court upholding the decision of the county commissioners to rezone, from residential to commercial, certain property owned by Island Sand and Gravel, Inc.

The Holmes Harbor area on South Whidbey Island is conflictingly described in the evidence and the parties' briefs as a "lovely residential area" and as a "mixed commercial and residential area for fifty years." These conflicting contentions about the area constitute the primary considerations in the controversy about the proper zoning of the property involved in this appeal. The following chronological events are pertinent:

(1) On March 11, 1966, Island Sand and Gravel, Inc., purchased a 17-acre parcel of land in the Holmes Harbor area, and shortly thereafter *relocated its gravel operations to this tract.*

(2) On December 5, 1966, following a series of public hearings, the Board of County Commissioners for Island County passed an interim zoning ordinance which zoned the entire Holmes Harbor area, including the 17-acre tract in question owned by Island Sand and Gravel, Inc., as "residential."

(3) At or near the time of passage of the interim zoning ordinance, Island Sand and Gravel, Inc., began construction of a *cement batching plant* on the 17-acre site.

(4) In 1969, Island Sand and Gravel, Inc., apparently feeling that it was in a somewhat precarious position in continuing to operate as a "nonconforming use", filed an application with the Island County Board of Adjustment for a conditional use permit to operate a cement batching plant on the 17-acre tract. The applicant later withdrew this application upon being advised at the board of adjustment meeting that a conditional use permit would not be granted to such an activity in a residential zone.

(5) On September 22, 1969, Island Sand and Gravel, Inc. filed an application with the Island County Planning Commission seeking to have the 17-acre tract rezoned from

"residential" to "commercial". After a public hearing, the requested zone change was denied on October 14, 1969.

(6) On October 21, 1969, Island Sand and Gravel, Inc., appealed this decision to the Board of County Commissioners for Island County. On January 12, 1970, following a public hearing, the board of commissioners changed the zoning classification of a portion of the 17-acre tract from residential to commercial. The rezoning left a "green belt" of 10 feet between the gravel company's batching plant operations and the land of neighboring property owners.

(7) Plaintiffs, residents of the Holmes Harbor area, instituted this certiorari proceeding to review the actions which resulted in the zoning change. The matter was considered by the trial judge in the superior court *solely upon the record* of the proceedings before the Island County Planning Commission and the board of commissioners, and the argument of counsel. The court ruled and entered judgment for Island Sand and Gravel, Inc., sustaining the rezoning of the 17-acre tract by the board of commissioners. Plaintiffs have appealed this ruling.

■ Initially, respondent Island County contends that plaintiffs, as petitioners in this proceeding, lack standing to litigate the issues which are raised before this court upon the basis that no evidence exists to show that their interests are affected in any way by the judgment of the trial court. We do not agree. The pleadings state that petitioners are neighboring landowners whose quiet enjoyment of residence is threatened by the activities of the batching plant operated by Island Sand and Gravel, Inc., and by the rulings of the board of commissioners and the trial court in perpetuating and extending that operation. As residents of the larger zoning area in question, petitioners appear to have a sufficient "protected interest" entitling them to a review of zoning action within the Holmes Harbor area. Jaffe, *Standing Again,* 84 Harv. L. Rev. 633 (1971). "As the welfare of the whole community is at stake when the enforcement of the planning laws is in issue, there may be something to be said for permitting judicial review at the

instance of a citizen, a resident, or a taxpayer." 3 R. Anderson, *American Law of Zoning* § 21.05, at 558 (1968). *See also* Feiler, *Zoning: A Guide to Judicial Review*, 47 J. Urb. L. 832 (1969):

Petitioners contend that the Board of Commissioners for Island County lacked jurisdiction to grant the immediate application for rezoning, arguing that RCW 36.70.630 restricts the action of the board of commissioners to a modification of the recommendation of the planning commission after a public hearing on the issue, but does not permit the board of commissioners to overrule the denial by the planning commission of a request for a zoning change, as was done in the instant case. However, the superior court having ruled on this issue, petitioners have waived their right to argue this point by their failure to set forth the trial court's findings pertaining to the issue and failure to assign error thereto. ROA I-43; *Valente v. Bailey*, 74 Wn.2d 857, 447 P.2d 589 (1968); *Locke v. Gaboriault*, 70 Wn.2d 1011, 422 P.2d 309 (1967).

Petitioners' other contentions embrace the related charges that (1) the board of commissioners acted arbitrarily and capriciously in rezoning the property of Island Sand and Gravel, Inc., from residential to commercial, and (2) such a reclassification, under the circumstances, constituted "spot zoning". We approach review of these issues as we did in *Smith v. Skagit County*, 75 Wn.2d 715, 718, 453 P.2d 832 (1969):

> [W]here the record both at trial and on appeal consists entirely of written and graphic material—documents, reports, maps, charts, official data and the like—and the trial court has not seen nor heard testimony requiring it to assess the credibility or competency of witnesses, and to weigh the evidence, nor reconcile conflicting evidence, then on appeal a court of review stands in the same position as the trial court in looking at the facts of the case and should review the record de novo.

*Accord, Carlson v. Bellevue*, 73 Wn.2d 41, 435 P.2d 957 (1968); *Bishop v. Houghton*, 69 Wn.2d 786, 420 P.2d 368 (1966). A de novo review of the record before this court, in

our opinion, reveals not only a clear example of spot zoning, but arbitrary and capricious action by the board of commissioners as well in reclassifying the area in question as "commercial" essentially for the primary benefit of the property owner, Island Sand and Gravel, Inc., without appreciable benefit to the interest of the public.

The nature of our standard of review in zoning cases was well-stated in *State ex rel. Myhre v. Spokane,* 70 Wn.2d 207, 210, 422 P.2d 790 (1967):

> Zoning is a discretionary exercise of police power by a legislative authority. *Lillions v. Gibbs,* 47 Wn.2d 629, 289 P.2d 203 (1955). Courts will not review, except for manifest abuse, the exercise of legislative discretion. *State ex rel. Smilanich v. McCollum,* 62 Wn.2d 602, 384 P.2d 358 (1963). Manifest abuse of discretion involves arbitrary and capricious conduct. Such conduct is defined to be without consideration and in disregard of the facts. *State ex rel. Lopez-Pacheco v. Jones,* 66 Wn.2d 199, 401 P.2d 841 (1965); *State ex rel. Cosmopolis Consol. School Dist. No. 99 v. Bruno,* 61 Wn.2d 461, 378 P.2d 691 (1963). One who asserts that a public authority has abused its discretion and is guilty of arbitrary, capricious, and unreasoning conduct has the burden of proof. *State ex rel. Lopez-Pacheco v. Jones, supra; State ex rel. Longview Fire Fighters Union, Local 828, v. Longview,* 65 Wn.2d 568, 399 P.2d 1 (1965). If the validity of the legislative authority's classification for zoning purpose is fairly debatable, it will be sustained. *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 71 L.Ed. 303, 47 Sup. Ct. 114, 54 A.L.R. 1016 (1926).

The task before this court then is to determine whether reasonable minds could differ in finding a substantial relation between the zoning action of the board of commissioners and the public health, safety, morals or general welfare. *McNaughton v. Boeing,* 68 Wn.2d 659, 414 P.2d 778 (1966); 8A E. McQuillin, *Municipal Corporations* § 25.279 (3d ed. 1965). "Where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached." *Lillions v. Gibbs,* 47 Wn.2d 629, 289 P.2d 203 (1955) at 633.

■ A review of the findings of fact made by the board of commissioners, as well as the testimony received at the public hearings, reveals that the pertinent bases of the board's ruling were not supported by the evidence presented before it, indicating that any relation between the zoning action and the public interest was tenuous at best. The board of commissioners found the following:

1. A portion of the Zone Change Request was being used commercially at the time of the adoption of the Interim Zoning Ordinance in December 5, 1966, and at that time it was intended to zone all property being used as such in its existing use.

2. It has been our policy for anyone requesting a zone change to state his intent of use for the property to be rezoned. In this case a portion of his property is being used commercially, until plans are submitted for the remaining property the zone change approval is limited to that in existence.

3. Inspection and percolation tests submitted showed poor soils for Sanitary Disposal. These tests indicate this area is entirely unsatisfactory for residential development except in tracts large enough to allow greatly enlarged drainfields.

4. The services of Island Sand and Gravel, Inc., is necessary for the growth and development of Island County, and as the island continues to grow and develope, (sic) additional services will be necessary, hence the company will need to expand.

5. Island Sand and Gravel is one of the needed facilities on the south end therefore one of the few areas of employment for south end residents.

6. This type of operation would be compatible with surrounding residential areas due to the existing "Green Belt" separating it from the more restrictive residential zone.

The trial court determined that these findings were amply supported by the testimony taken before the board of commissioners, and therefore that the ruling of the board did not constitute arbitrary and capricious action. We disagree. Finding No. 1 is inconsistent with the affirmative action taken by the board in passing the interim zoning ordinance

which zoned the entire Holmes Harbor area, including the 17-acre parcel at issue, as residential property, evincing an intent to phase out nonconforming uses of real property in that district. Further, testimony at the public hearings indicated that, although Island Sand and Gravel, Inc., had purchased the 17-acre tract, actual commercial operations had not commenced by the time the interim zoning ordinance was enacted. Therefore, even if the intent at the time of passage of the interim zoning ordinance was in fact to "zone all property being used as such in its existing use," it is evident that the board could not at that time have considered this 17-acre parcel as a "commercial" area. Finding No. 2 is merely a restatement of procedure and does not reach the merits of the immediate inquiry. Finding No. 3 attempts to justify commercialization of the property in question upon the basis of tests which indicated that sanitary disposal for residential purposes would be impeded by the condition of the soil. However, nothing in the record indicates that the soil on this tract of land is unique or different from the surrounding area, just as nothing in the record indicates that the condition of the soil was not fully known at the time of passage of the interim zoning ordinance. Thus, the earlier presumption of an intent to zone the area exclusively for *residential* use is evidenced, notwithstanding suggested difficulties relating to soil conditions. Findings No. 4 and No. 5 state that this gravel company is needed by the residents of the area for growth and development, and as a means of employment. Regarding the first of these findings of need, undisputed testimony before both the planning commission and the board of commissioners made it plain that three other similar companies do business on Whidbey Island, one of which provides identical services and products at less expense to the consumer than Island Sand and Gravel, Inc. Regarding employment possibilities, the testimony shows that Island Sand and Gravel, Inc., directly employs only 8 to 10 persons. Further, in *Smith v. Skagit County, supra* at 744, we stated:

That the factories provided employment did not consti-

tute a substantial contribution to the general welfare as contemplated by the zoning laws as the public detriments flowing from locating factories in that particular district far exceeded the benefits attributable exclusively to locating factories in that same district. *Fritts v. Ashland,* 348 S.W.2d 712 (Ky. App. 1961).

Similarly, we must here weigh public benefit against detriment. Testimony of neighboring property owners at the hearing before the board of commissioners described the plant operation as "noisy, dirty, unattractive", "a public eye sore", "screeching . . . until all hours of the night", "dirty dust producing", "dangerous nuisance", "the noise from an operation such as this can be very detrimental to the health", "every piece of property in that neck of the woods is going to be downgraded." It seems to us that employment for a few is not a sufficient factor, in and of itself, to constitute a substantial contribution to the general welfare where complaints are leveled against the benefactor by the very public to be benefitted. Recognizing that similar operations on the island are available to provide needed products and services without creating a threat to the health and welfare of neighboring landowners, it is evident that the need to rezone the property in question to commercial in the middle of a residential zone is considerably outweighed by the detriment to the public. "The public welfare must be considered from the standpoint of the objective of the zoning ordinance and all of the property within any particular use district." *State ex rel. Miller v. Cain,* 40 Wn.2d 216, 223, 242 P.2d 505 (1952). From this perspective, findings No. 4 and No. 5 are not supported by the evidence. Finding No. 6 suggests that the rezoning is proper since this operation "would be compatible with the surrounding residential areas due to the existing 'Green Belt' separating it from the more restrictive residential zone." Again, however, testimony of property owners living near the Island Sand and Gravel, Inc., facility stated at the public hearings that the greenbelt of natural brush and trees "still does not hide any noise or any of the confusion." The physical separation or barrier provided by the "Green

Belt" of 10 feet seems something of a token gesture in view of the fact that property owners thousands of feet away were considerably bothered by both noise and dust.

On the face of the indicated findings, this court in good conscience cannot accept the argument that rezoning the land in question bears a substantial relationship to the public interest or welfare. Keeping in mind the rule that an honest difference of opinion upon this issue is sufficient to uphold the action of the board of commissioners, we now consider the proceedings more closely to determine whether, in fact, reasonable men could differ regarding the relation of the zoning action to the public interest. This closer analysis leads us to conclude that the action of the board of commissioners was arbitrary and capricious.

■ First, the record before us indicates that the 17-acre parcel in question was not being used for cement batching operations at the time of enactment of the interim zoning ordinance; therefore the subsequent operation of the batching plant could not be a nonconforming use. The use of property must actually be established prior to the adoption of the zoning ordinance to qualify as a nonconforming use thereafter. *State ex rel. Smilanich v. McCollum,* 62 Wn.2d 602, 384 P.2d 358 (1963). It is almost universally held that the mere purchase of property and occupation thereof are not sufficient factors, either severally or jointly, to establish an existing nonconforming use, and a vested right to a nonconforming use cannot exist unless the particular use in question is in fact established prior to the enactment of the zoning ordinance. *Rainwater v. Coweta County Bd. of Zoning Appeals,* 123 Ga. App. 467, 181 S.E.2d 540 (1971); *Pearce v. Lorson,* 393 S.W.2d 851 (Mo. App. 1965); *Caruthers v. Board of Adjustment,* 290 S.W.2d 340 (Tex. Civ. App. 1956); *Lutz v. New Albany City Plan Comm'n,* 230 Ind. 74, 101 N.E.2d 187 (1951). "Before a supposed non-conforming use may be protected, it must exist somewhere outside the property owner's mind." *Cook v. Bensalem Township Zoning Bd. of Adjustment,* 413 Pa. 175, 196 A.2d 327, 330 (1963). Therefore, mere intention or contemplation of an

eventual use of land is insufficient to establish an existing use for protection as a nonconforming use following passage of a zoning ordinance. *Phoenix City Council v. Canyon Ford, Inc.*; 12 Ariz. App. 595, 473 P.2d 797 (1970); *Jahnigen v. Staley*, 245 Md. 130, 225 A.2d 277 (1967); *Windsor v. Lane Dev. Co.*, 109 Ohio App. 131, 158 N.E.2d 391 (1958).

■ As noted above, the evidence in this case shows that Island Sand and Gravel, Inc., had purchased the 17-acre tract of land prior to the date of enactment of the interim zoning ordinance, however no cement batching operations had been commenced by this crucial date. The transcript of the December 1, 1969 public hearing before the board of commissioners substantiates this fact:

AL ALEXANDER:
THIS PLANT WASN'T BUILT AT THAT TIME [date of the enactment of the interim zoning ordinance] WAS IT?
ED CHRISTOE:
I DON'T THINK SO. I DON'T KNOW FOR SURE.
AL ALEXANDER:
WELL IT WASN'T BUILT.
ED CHRISTOE:
YOUR LAND WAS BOUGHT FOR THAT PURPOSE I THINK.
DEVEER DISHEROON:
. . . THE PLANT ITSELF WASN'T SETTING THERE BUT THE PROPERTY WAS BEING USED FOR THAT CERTAIN PURPOSE FOR THE STORING OF MATERIAL.
AL ALEXANDER:
WELL JUST BECAUSE YOU BUY SOMETHING TO USE IT SOMEDAY, THAT DOESN'T NECESSARILY MAKE IT LEGAL.
ED CHRISTOE:
I THINK IT DOES UNDER THE LAW, AL.

Notwithstanding this fact that the operation of the batching plant was not an established existing use at the time the interim zoning ordinance was enacted, the board of commissioners assumed and erroneously proceeded upon the assumption that the operation constituted a nonconforming use. Without a vested right in continuing a nonconforming use, Island Sand and Gravel, Inc. had no valid claim to later commence operation of the cement batching plant. The board's actions in condoning or specifically authorizing

continuance of the alleged but in fact spurious nonconforming use, either by (1) an erroneous classification as a nonconforming use, or (2) a permanent extension of this undesirable use through a zoning reclassification of the property, was inappropriate. As operation of the batching plant itself was a violation of the interim zoning ordinance, the board of commissioners clearly abused its discretion in perpetuating the inconsistent use of the tract of land in question.

■ Even if this use had been in existence prior to enactment of the zoning ordinance, the board's extension of a "nonconforming use" with intent to accommodate expansion of such use was contrary to the interest of the public, and therefore constituted arbitrary and capricious action. As a "nonconforming use" of residentially-zoned property, the operation of the Island Sand and Gravel, Inc., *batching plant* constituted an activity inconsistent with the reasoned planning of the county zoning authorities. The disfavored nature of a nonconforming use was noted in 147 A.L.R. 167, 168 (1943):

> It has been pointed out in several cases that the ultimate purpose of zoning ordinances is to confine certain classes of buildings and uses to certain localities; that since the continued existence of those which are nonconforming is inconsistent with that object, it is contemplated that conditions should be reduced to conformity as completely and as speedily as possible with due regard to the special interest of those concerned and that where suppression is not feasible without working substantial injustice, there shall be accomplished the greatest possible amelioration of the offending use which justice permits; and that the generally accepted method of accomplishing this result is to prevent any increase in the nonconformity and, when changes in the premises are contemplated by the owner, to compel, so far as is expedient, a lessening or complete supression of the nonconformity.

The policy of zoning legislation is to phase out a nonconforming use. *Bartz v. Board of Adjustment,* 80 Wn.2d 209, 492 P.2d 1374 (1972); *State ex rel. Smilanich v. McCollum,*

*supra.* The basis for this policy was stated in *State ex rel. Miller v. Cain,* 40 Wn.2d 216, 220-21, 242 P.2d 505 (1952):

> The theory of the zoning ordinance is that her nonconforming use is in fact detrimental to some one or more of those public interests (health, safety, morals or welfare) which justify the invoking of the police power; . . .
>
> . . .
>
> ". . . [I]t cannot be increased nor can it be extended indefinitely if zoning is to accomplish anything.

Thus, while a nonconforming use may be permitted to continue to avoid severe detriment to the property owner, its existence is disfavored as inconsistent with the comprehensive plan, and therefore in conflict with the interests and welfare of the community. In ruling that the portion of the property in question should be rezoned to a commercial classification, the board of commissioners extended the temporary existence of the so-called nonconforming use to one of permanence, and the board further indicated its willingness to allow the owner of the property to expand such operations in the future, as indicated both in finding No. 4 and by numerous statements made by board members during the public hearings. While justice to the property owner may have required the board of commissioners to permit continuation of an existing nonconforming use, substantial injustice to the remainder of the community follows from the extension and expansion of that use. Even granting, for the moment, the finding of the board that the neighboring residents need the services of Island Sand and Gravel, Inc., arguably it is at once apparent that this need would have been satisfied by simply permitting the operation to continue as a nonconforming use. In this light, it is evidence that the board of commissioners abused its discretion in providing exclusive benefit to Island Sand and Gravel, Inc., at the expense of the public.

■ Next, we rule that the action of the board of commissioners resulted in "spot zoning", further establishing arbitrary and capricious conduct. This form of zoning was described in *Smith v. Skagit County,* 75 Wn.2d 715, 743, 453 P.2d 832 (1969), as follows:

Spot zoning has come to mean arbitrary and unreasonable zoning action by which a smaller area is singled out of a larger area or district and specially zoned for a use classification totally different from and inconsistent with the classification of surrounding land, and not in accordance with the comprehensive plan. Spot zoning is a zoning for private gain designed to favor or benefit a particular individual or group and not the welfare of the community as a whole. *See* C. Rhyne, *Municipal Law* § 32-3, at 825 (1957). The vice of a spot zone is its inevitable effect of granting a discriminatory benefit to one or a group of owners and to the detriment of their neighbors or the community without adequate public advantage or justification.

Although spot zoning is not per se illegal, it is almost universally condemned. *State ex rel. Miller v. Cain, supra; see also* Morris, *Toward Effective Municipal Zoning,* 35 Wash. L. Rev. 534 (1960). " 'Spot zoning' merely for the benefit of one or a few or for the disadvantage of some, still remains censurable because it is not for the *general* welfare . . ." 2 J. Metzenbaum, *Law of Zoning* 1519 (2d ed. 1955), quoted approvingly in *Pierce v. King County,* 62 Wn.2d 324, 339, 382 P.2d 628 (1963). In the case before us, it is readily apparent that Island Sand and Gravel, Inc., is the primary beneficiary of the change in zoning classification. The sole benefit to the public found by the board of commissioners was that expansion of the cement batching operation would assist in the development of Whidbey Island—a finding lacking evidentiary support. Additionally, testimony at the public hearings on the issue indicated that approximately 150 neighboring property owners contend that the facility in question is not only unneeded, it is unwanted. Since the rezoning here has resulted in a smaller area being singled out of a larger area for a use classification totally different from and inconsistent with that of the surrounding district, we conclude upon these facts that the board's action constituted spot zoning. Because the action was not for the *"general* welfare", it was in turn arbitrary and capricious.

Finally, our conclusion that the board of commis-

sioners abused its discretion is amplified by the distressing nature of the public hearings held by the board on the rezoning issue. One of the primary duties of public officers impressed with the duty of conducting a fair and impartial fact-finding hearing upon issues significantly affecting individual property rights as well as community interests, is to ensure that such hearings are "open minded, objective, impartial and free of entangling influences or the taint thereof." *Chrobuck v. Snohomish County,* 78 Wn.2d 858, 869, 480 P.2d 489 (1971); *see also State ex rel. Beam v. Fulwiler,* 76 Wn.2d 313, 456 P.2d 322 (1969). In *Smith v. Skagit County, supra* at 739, we stated:

> It is axiomatic that, whenever the law requires a hearing of any sort as a condition precedent to the power to proceed, it means a fair hearing, a hearing not only fair in substance, but fair in appearance as well.

In the case before us, the record discloses that the conduct of the chairman of the board of commissioners at the January 12, 1970, public hearing substantially reduced this necessary appearance of fairness. The transcripts of the hearings indicate that the chairman was the former owner of the applicant Island Sand and Gravel, Inc.; that notwithstanding his earlier pecuniary interest in the continuation and expansion of this particular enterprise, this board member summarily moved to grant his successor's application in spite of the fact that not all of the opposing testimony had been heard; that this chairman, upon being advised that he was out of order in expressing his personal view favoring granting of the application while acting as chairman and before the opinion of the public had been fully received, nonetheless stated that he would "keep on anyway", and then (1) declared his wish to "rezone the whole 17 acres commercial," and (2) in the face of a motion which he opposed, told the movant that "you are just wasting your time talking." Under conditions as questionable as these a public hearing is substantially lacking in an appearance of fairness. Ostensibly inappropriate conduct of the chairman may very well have infected the subsequent

decision-making process of the board as a whole. *See Buell v. Bremerton,* 80 Wn.2d 518, 495 P.2d 1358 (1972).

Based upon the reasoning earlier stated, we hold that the action taken by the board of commissioners, in rezoning the land of Island Sand and Gravel, Inc., from residential to commercial, cannot reasonably be found to be substantially related to the health, safety, morals or general welfare of the public, and therefore constituted arbitrary and capricious conduct. Accordingly, the trial court's ruling affirming the board of commissioners is reversed, and the cause is remanded for further proceedings consistent with this opinion.

HAMILTON, C.J., ROSELLINI, HUNTER, HALE, STAFFORD, WRIGHT, and UTTER, JJ., concur.

NEILL, J., concurs in the result.