The STATE ex rel. FISHER, Atty. Gen., Appellee,

v.

McNUTT et al., Appellants.

[Cite as *State ex rel. Fisher v. McNutt* (1992), 73 Ohio App.3d 403.]

Court of Appeals of Ohio,
Muskingum County.

No. CA 91–16.

Decided April 17, 1992.

*Lee I. Fisher*, Attorney General, and *John P. Bartley*, Assistant Attorney General, for appellee.

*Robert N. Conley*, for appellants.

GWIN, Judge.

Defendants-appellants, Donald and Patty McNutt ("appellants"), appeal from the judgment entered in the Muskingum County Court of Common Pleas permanently enjoining appellants from interfering with the use of an easement located on their property and owned by plaintiff-appellee, state of Ohio, Department of Natural Resources ("state"). Appellants' assignments of error are attached hereto and made a part of this opinion.[1]

## Facts

In 1958, the state acquired a right-of-way easement by deed from the United States of America. The original grant of this easement was made in 1887 by Stuart (Stewart) Fauber, appellant's predecessor in title, to his neighbor Ella (Ellie) Harmer, the state's predecessor in title. The original grant provided:

"Stuart Fauber

To

Ella Harmer

"Know all men by these presence, that we Stewart Fauber and Chestina Fauber husband and wife of the County of Muskingum and State of Ohio in consideration of the sum of one dollar and other considerations to us paid by Ellie Harmer of said County and State the receipt whereof is hereby acknowledged do hereby grant to said Ella Harmer her heirs and assigns a right of way across the west half of the North East quarter of section thirty three township thirteen range twelve in Salt Creek Township, Muskingum, Ohio. Said right of way is described as follows. Being fifteen feet wide and beginning on the east line of the land of said Fauber, where the private road crosses said land, thence along said South line to the point where the lands of Harmer, Evans, Clapper, and Fauber join. Said right of way is for road purposes only."

At the time of the original grant of the easement, Fauber owned the fee simple title to approximately eighty acres of property located northeast of Harmer's 77.7 acres of fee simple property. The easement was duly recorded and followed an unbroken chain of title.

In 1958, the state acquired Harmer's original 77.7 acres and an additional 4,764.60 acres of adjacent property from the United States government. In 1967, appellants acquired Fauber's original property, including that portion of the property servient to the right-of-way easement.

---

1. See Appendix.

Subsequent disputes concerning the location and extent of the state's easement on appellants' property caused the state to file an action seeking injunctive relief against appellants. The dispute concerning the location of the easement was resolved between the parties and is not at issue here. However, the dispute concerning the scope and extent of the easement remains.

The state, through the Ohio Department of Natural Resources, Division of Forestry, intends to use its easement, for road purposes, in managing the forest located not only on Harmer's original 77.7 acres, but the entire 4,842.30 acres of land known as Blue Rock State Forest. The forest management includes, but is not limited to: boundary maintenance; inspection, measurement and inventory of trees; timber stand improvement; timber harvest; enforcement of forest laws by forest officers; protection of forest from fires; prevention, detection and suppression of forest insects and disease; scouting and correcting forest tree seeds; recreation management, inspection, development, maintenance of forest facilities and trails; mineral management by authorized agencies; examination for scientific research into endangered or threatened plant or wild life, hydrology concerns, unique geographical features; and any other activity necessary for prudent forest management.

The state claims its use of the easement is not limited to Harmer's original 77.7 acres because the original grant of the easement was silent as to whether the easement was for the sole benefit of Harmer's property, and did not specifically reference Harmer's fee simple title of 77.7 acres of property. This ambiguity, the state asserts, allows the court to consider the surrounding circumstances at the time of the grant so to give effect to the parties' intentions regarding the extent of the easement. Upon construing the surrounding circumstances and the ambiguous language contained in the grant most strongly in favor of the state (the grantee of the easement), as the law requires, the state claims it may use its easement to conduct its forest management on the entire 4,842.30 acres and such does not constitute an unreasonable increase in burden to appellant's servient property.

It is appellants' position that the state can use its easement of right of way for ingress and egress across appellants' property, but such use should be limited to the 77.7 acres. Appellants claim the original grant of the easement unambiguously limited the grantee's use of the easement to the 77.7 acres owned by Harmer at the time the easement was granted.

The trial court, after "having reviewed the pleading, memoranda of law, arguments of counsel, the evidence and exhibits filed by the parties," entered judgment, findings of fact and conclusions of law consistent with the state's position. Appellants timely appealed.

■ Before addressing appellants' claimed errors on appeal, we must clarify our standard of review. This is not a review of a summary judgment as argued by appellants. The record demonstrates that the trial court specifically overruled the state's motion for summary judgment. Instead, the trial court, by agreement of the parties, and without objection, acted as the trier of fact in weighing the pleadings, law, arguments, and evidence of the parties in reaching its decision. Furthermore, appellants do not assign as error the procedure in which the trial court arrived at its final judgment. Accordingly, we give deference to the trial court's judgment and fact findings, and restrict our review to whether there exists in the record some evidence to support same. See *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 262, 376 N.E.2d 578, 579.

### Assignment of Error Nos. I, II, III, IV, VI, VII and VIII

Through these assignments, appellants claim the trial court's judgment permitting the state to use the easement to gain access to thousands of acres of land adjacent to the original 77.7 acres was contrary to law, an abuse of discretion, and against the manifest weight of the evidence.

The parties agree that the original grant between Fauber and Harmer created an easement appurtenant. As such, appellants' property, whereon the easement exists, is the servient tenement, the land upon which the obligation rests, and the state's 77.7 acres is the dominant tenement, the estate in land to which the right of the easement belongs. The dispute in this case centers upon whether the state may use its easement located on appellants' property to provide forest management not only for the 77.7 acres owned by the original grantor of the easement, but also for the additional 4,764.60 acres of adjacent property.

The general rule of law regarding the use of easements appurtenant was set forth in *Berardi v. Ohio Turnpike Comm.* (1965), 1 Ohio App.2d 365, 372–373, 30 O.O.2d 385, 389–390, 205 N.E.2d 23, 28–29:

" 'An easement can be used only in connection with the estate to which it is appurtenant and cannot be extended by the owner to any other property which he may then own or afterward acquire, unless so provided in the instrument by which the easement is created, and the fact that such property is within the same enclosure as the lot to which the easement is appurtenant makes no difference in the application of the rule. Accordingly, a right of way cannot be used by the owner of the dominant tenement to pass to other land or premises adjacent to or beyond that to which the easement is appurtenant * * * ' "

In *Methodist Protestant Church v. Laws* (1893), 4 Ohio C.D. 562, 566, 7 Ohio C.C. 211, 220, affirmed (1896), 55 Ohio St. 662, 48 N.E. 1114, the Hamilton County Court of Common Pleas noted the following law concerning easements appurtenant:

" 'It appears to us that the right of way appurtenant to land is appurtenant to all and every part of the land, and that upon division of the land to which the right of way is attached, a right of way will exist in the owner of each of the parts in which it is divided.' 55 Mass. 1; Serg. & R. 229.

" 'No man can impose a new restriction or burden on his neighbor by his own act, and for this reason. An owner of an easement cannot, by altering his dominant tenement, increase his right.' *Goddard* [on Easements], 280. " ' * * *

" 'A right of way appurtenant to the dominant tenement can be used only for the purpose of passing to or from their tenement. It cannot be used for any purpose unconnected with the enjoyment of the dominant tenement, neither can it be assigned by him to a stranger, and so be made a right in gross. Nor can he license a stranger to use the way when he is not going to and from the dominant tenement.' *Goddard*, 321.

" 'The law is perfectly settled, if one man has a right of way over land of another, to go to a particular place, he can not use it for the purpose of going to a place beyond it, because the servient tenant is only subject to a certain inconvenience.' *Mallins*, V.C.I.R., 17 Eq., page 167."

■ In this case, the grant in which the easement was created did not provide that the owner of the dominant tenement could use the right of way across appellants' servient tenement to pass to the state's other land adjacent to or beyond that to which the easement is appurtenant. Accordingly, the law specifically proscribes the state's extended use of the easement in question.

However, apparently cognizant of this rule, the trial court found the grant of the easement to be ambiguous because of its silence as to whether the easement was for the sole benefit of the property belonging to the original grantee, *i.e.*, Harmer. We find as a matter of law the original grant of the easement to be unambiguous, and the trial court erred in finding otherwise.

Here, the original grant of the easement in 1887 specifically was entitled "Stuart Fauber to Ella Harmer." The first sentence of that grant provided that the Faubers "in consideration of the sum of one dollar and other considerations * * * do hereby grant to said Ella Harmer, her heirs and assigns a right of way across" their property. Contrary to the trial court's finding of silence, we find the grant speaks loudly as to which property was to benefit from the easement.

Assuming *arguendo* that the original grant of the easement was ambiguous, the evidence before the trial court was overwhelmingly contrary to the court's finding that the state's plan to use the easement to conduct forest management on the entire 4,842.30 acres of land "does not constitute an unreasonable increase in burden." In reaching this finding, the trial court looked to the surrounding circumstances at the time the grant was created for the purpose of giving effect to the intentions of the parties with regard to the extent of the easement. See *Methodist Protestant Church, supra.*

Under the undisputed facts of this case, the surrounding circumstances at the time the easement was created were as follows: (1) Fauber granted to Harmer a right-of-way easement across Fauber's property to a specific location; and (2) Harmer owned fee simple title to 77.7 acres of property. Reasonable minds looking at this evidence could only conclude the intentions of the original grantee and grantor of the easement were that the right of way would only be used for ingress and egress to Harmer's 77.7 acres. Furthermore, the state's plan to use the right-of-way easement to conduct forest management on the entire 4,842.30 acres of land would enhance the burden on appellants' servient estate by sixty times. This certainly is an unreasonable increase in the burden to the servient estate and could not have been intended by the original grantor and grantee.

For these reasons, we reverse the judgment entered in the Muskingum County Court of Common Pleas and, pursuant to App.R. 12(B), hereby enter judgment for appellants and order the state to restrict its use of the right-of-way easement to only the 77.7 acres of property originally owned by Harmer.

We sustain appellant's first, second, third, fourth, sixth, seventh and eighth assignments of error.

### Error No. V

Through their fifth assignment of error, appellants claim the trial court's judgment constituted an unlawful taking of their property.

For the reasons previously stated, we overrule appellant's fifth assignment of error.

For the foregoing reasons, the judgment entered in the Muskingum County Court of Common Pleas is reversed and we hereby enter judgment for appellants and order the state to restrict the use of the aforementioned easement to the 77.7 acres of property originally owned by Harmer.

*Judgment reversed.*

PUTMAN, P.J., and MILLIGAN, J., concur.

Appendix

Assignments of Error

1. It was error for the court of common pleas of Muskingum County to determine that an easement across private property, and appurtenant to 77.7 acres for over 100 years, which is clearly evident in deeds of transfer, could now be used to gain access to and from not only the 77.7 acres, but also the entire 4572 acres of an adjacent state forest and other unknown state lands, when it is well-known that the law in Ohio, and undoubtedly in every state of the United States is, that one having an easement by grant may assign that easement with the dominant estate, and the easement goes to every portion of the dominant estate assigned, but can go no further.

2. It was error for the court of common pleas to determine that an easement appurtenant to 77.7 acres could be used to gain access to thousands of acres of other lands, adjacent to the 77.7 acres, when it is universal and well-known that if one acquires a right of way to one lot or parcel of land, he or she cannot use it to gain access to that parcel and thence over his or her own land to other lands belonging to him or her.

3. It was error for the court of common pleas to determine that a right of way, appurtenant to 77.7 acres, could be changed, after 100 years, into an easement in gross, and then made assignable or inheritable.

4. It was error for the court of common pleas to determine that an easement, which was an easement appurtenant to 77.7 acres for over 100 years, could now, magically, become something else, which something else is still unknown, merely by using obfuscation, pseudo-cleverness, and imaginative wanderings, when it is elementary, universal, and well-known that an easement is never presumed to attach to the person of a grantee (if it did, it dies with the grantee), or undergo some other magical transformation, where it can fairly be construed as appurtenant to some other estate.

5. It was unconstitutional error for the court of common pleas to determine that a state agency, which state agency may, at one time, have had an easement across private property, which easement was appurtenant to 77.7 acres, could now use that same easement to gain access to and from *all* state lands, to include, specifically, the entire 4572 acres of Blue Rock State Forest that are presently adjacent to the 77.7 acres, when it is clear that the appropriation of a public easement across private property constitutes a "taking" of that private property.

6. It was error for the court of common pleas to determine that the appellee could make *any* use of the easement appurtenant, when the appellee has admitted that its intended plan of use for the easement appurtenant to the

77.7 acres includes hundreds of additional uses on thousands of additional acres, and when the facts clearly show that the original 77.7 acres has now been integrated into a common unit, called Blue Rock State Forest, and a lawful use of the easement cannot, at this time, be separated from an unlawful use.

7. It was error for the court of common pleas to grant a summary judgment for the appellee when the court of common pleas ignored the actual facts, arbitrarily, capriciously, and unlawfully created a totally new, but still mysterious and unexplained type of "easement", ignored both United States and Ohio Constitutional Law, and paid no attention whatsoever to any of the well-known and elementary legal precedents.

8. It was error for the court of common pleas to grant a permanent injunction permitting a state agency to conduct a pandora's box of undefined, unexplained, unlimited, and unlawful activities, some apparently copied from an old state agency manual, none of which the court knew anything about, not only on a dominant estate of 77.7 acres, but also on thousands of acres adjacent to the 77.7 acres, when the facts clearly show that the appellants neither did nor threatened to do any act in violation of the appellee's rights, the facts clearly show that it was the appellee who threatened to and did violate the appellants' rights, and the facts clearly show the lack of any evidence, much less the clear and convincing evidence, needed for a permanent injunction.