[Cite as *Diemling v. Kimble*, 2012-Ohio-3323.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| FELSON W. DIEMLING, ET AL. | : | JUDGES |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiffs-Appellants | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Julie A. Edwards, J. |
| -vs- | : | |
| | : | |
| DORIS KIMBLE | : | Case No. 11AP120047 |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common
                             Pleas, Case No. 2009CV040271


JUDGMENT:                    Affirmed in part and Reversed in part
                             and Remanded


DATE OF JUDGMENT:            July 18, 2012


APPEARANCES:

For Plaintiffs-Appellants              For Defendant-Appellee

THOMAS W. HARDIN                       WILLIAM A. KYLER
152 North Broadway                     JONATHAN C. MIZER
Suite 101                              405 Chauncey Avenue, NW
New Philadelphia, OH  44663            P.O. Box 668
                                       New Philadelphia, OH  44663

*Gwin, J.*

{¶1}  On April 6, 2009, appellants, Felson and Amy Diemling, filed a complaint for declaratory judgment and injunctive relief against appellee, Doris Kimble, regarding a dispute over an easement.  Appellants' property abuts appellee's property (aka "York Property"), and appellants' property is subject to an easement which was granted by their predecessors in title, John and JoAnne Pyle, to appellee and her now deceased husband on October 12, 1976.  Appellants alleged the intended use of the easement was unreasonable and amounted to overuse.  They sought to terminate the easement or in the alternative, sought a permanent injunction against the misuse of the easement. Appellants also alleged the easement had been extinguished by adverse possession. On November 28, 2011, the trial court found in favor of appellee after a bench trial.

{¶2}  Appellants assign three errors to the trial court:

I

{¶3}  "THE COURT OF COMMON PLEAS ERRED WHEN IT FOUND THAT JOHN PYLE AND FLOYD AND DORIS KIMBLE REASONABLY CONTEMPLATED AND INTENDED THAT THE EASEMENT WOULD BE USED FOR THE EXTRACTION OF MINERALS FROM THE YORK AND ERVIN PROPERTIES.

II

{¶4}  "THE COURT OF COMMON PLEAS ERRED WHEN IT FOUND THAT THE EASEMENT HAS BEEN USED FOR INGRESS AND EGRESS TO THE YORK PROPERTY AND PART OF THE ERVIN PROPERTY, YET ORDERED THAT THE SUBJECT EASEMENT SHOULD NOT BE TERMINATED AND THAT A PERMANENT INJUNCTION AGAINST THE MISUSE OF THE EASEMENT IS NOT WARRANTED.

III

{¶5}   "THE COURT OF COMMON PLEAS ERRED WHEN IT FOUND THAT THE USE OF THE EASEMENT BY DORIS KIMBLE, HER FAMILY, AND PENN OHIO COAL CO., AS SOMEONE TRANSACTING BUSINESS WITH DORIS KIMBLE, IS REASONABLE AND CONSISTENT WITH THE GRANT OF THE EASEMENN AND ORDERED THAT THE SUBJECT EASEMENT SHOULD NOT BE TERMINATED AND THAT A PERMANENT INJUNCTION AGAINST THE MISUSE OF THE EASEMENT IS NOT WARRANTED."

I & II

{¶6}   On October 12, 1976, the Pyles granted appellee and her now-deceased husband an easement "for ingress and egress upon, over and across" their property. The only land appellee and her husband owned that required ingress and egress rights over the Pyle property was the 36 plus acres known as the York Property.  Appellee and her husband had obtained an option to purchase adjacent property (hereinafter "Ervin Property") in 1973 and an oil and gas lease on the Ervin property in August 1976, all prior to the purchase of the York property.  In 1978 appellee exercised the option to purchase the Ervin property. In 2004, the Pyles deeded their property to appellants. Appellee did not obtain a permit to mine the York property until 2006.  Until 2009, the traffic on the easement was light and intermittent including tractors and livestock.

{¶7}   An easement is a grant of only limited use of the land.  *Crane Hollow, Inc. v. Marathon Ashland Pipeline, LLC,* 138 Ohio App. 3d 57, 66, 740 N.E. 2d 328 (2000), citations deleted.  When interpreting the terms of a written easement, the court must follow the ordinary rules of contract construction so as to carry out the intent of the

parties as demonstrated by the language in the contract. *Lakewood Homes v. BP Oil, Inc.* 11th District No. 5-98-29, 1999-Ohio-851 citing *Skivoloski v. East Ohio Gas Company,* 38 Ohio St. 2d 244, 313 N.E. 2d 374 (1974), syllabus, paragraph one.

**{¶8}** If the question is the scope of an easement, the court must look to the language of the easement to determine the extent. If there is no specific delineation of the easement, or if the document is ambiguous, then the court must look to the surrounding circumstances in order to determine the intent of the parties. *Murray v. Lyon,* 95 Ohio App. 3d 215, 219, 642 N.E. 2d 41 (1994). The language of the easement, coupled with the surrounding circumstances, is the best indication of the extent and limitations of the easement. *Apel v. Katz,* 83 Ohio St. 3d 11, 17, 1998-Ohio-420, 697 N.E. 2d 600.

**{¶9}** In a case where the language of an easement is ambiguous, the use of the easement can be extended if the court finds the parties intended to allow an extension at the time they entered into the easement agreement. *Cortland United Methodist Church v. Knowles,* 11th District No. 2006-T-0110, 2007-Ohio-3383. Otherwise a court must determine whether an increased use or expansion unreasonably burdens the servient estate. *Anspach v. Madden,* 6th District No. S-84-40, 1985 WL 8215 (November 1, 1985).

**{¶10}** Nevertheless, courts have held developmental changes and inventions could entitle the owner of an easement to vary the use of the easement. For example, in *Mark 10 Mining & Consulting, Inc. v. Rawson,* 7th District No. 91-C-77, 1992WL 356177 (November 25, 1992), the Court of Appeals for Columbiana County found that changes in the use of an easement are permitted to the extent the changes result from

normal growth and development of the dominant land.  Id. at 2, citing *Erie Railroad Company v. S. H. Kleinnman Realty Company,* 92 Ohio St. 96, 110 N.E. 527 (1915). See also *Crane Hollow, supra.*

**{¶11}** At the time of the original granting of the easement in 1976, the only land appellee and her husband owned that required ingress and egress rights over the Pyle property was the parcel known as the York Property.  Therefore, the easement is an easement appurtenant.  In *Berardi v. Ohio Turnpike Comm.* (1965), 1 Ohio App.2d 365, 372-373, 205 N.E.2d 23, 28-29, the court found:

**{¶12}** "A right of way appurtenant to the dominant tenement can be used only for the purpose of passing to or from their tenement.  It cannot be used for any purpose unconnected with the enjoyment of the dominant tenement, neither can it be assigned by him to a stranger, and so be made a right in gross.  Nor can he license a stranger to use the way when he is not going to and from the dominant tenement.* * * " 'The law is perfectly settled, if one man has a right of way over land of another, to go to a particular place, he cannot use it for the purpose of going to a place beyond it, because the servient tenant is only subject to a certain inconvenience." Citations deleted.

**{¶13}** Appellants assert the trial court erred in determining the original 1976 easement between the Pyles (appellants' predecessor in title) and appellee and her husband was ambiguous.  Appellants argue that because of this finding, the trial court erroneously proceeded to consider the surrounding circumstances in construing the language of the contract to determine if appellee and her assigns had the right to ingress and egress adjacent property that appellee did not own at the time of the granting of the easement.

{¶14} In its November 28, 2011 judgment entry, the trial court did not specifically find the easement was ambiguous but considered the factors and circumstances and made findings of fact:

{¶15} "3. John Pyle arranged for the grant of the easement to Floyd and Doris Kimble.  Neither John Pyle nor Floyd Kimble are available to testify about the intended scope of the easement because John Pyle passed away in May 2005, and Floyd Kimble passed away in September 1998.

{¶16} "4. At the time the easement was granted in October 1976, Floyd and Doris Kimble owned appurtenant acreage consisting of approximately 36 acres (hereafter referred to as the 'York Property') (Plaintiffs' Exhibit No. 1).

{¶17} "5. In 1978, Floyd Kimble acquired additional adjacent property owned by William Ervin (hereafter referred to as the 'Ervin Property') (Plaintiffs' Exhibit No. 3).  At the time of the purchase, Floyd Kimble already had a lease for the mineral rights for a portion of the Ervin property.  Floyd Kimble had also previously entered into a purchase agreement with William Ervin to purchase the Ervin Property in 1973 and had made a $10,000 down payment on the property; however, the purchase fell through at that time. (Defendant's Exhibit No. J).

{¶18} "8. Floyd Kimble was engaged in surface mining on the Pyle Property and elsewhere prior to 1976.

{¶19} "9. Even if John and JoAnne Pyle were unaware of the surface mining that had taken place on the Pyle Property, John Pyle was or should have been aware that Floyd Kimble was involved in coal mining operations.  John Pyle was a surveyor in the

area. Furthermore, John Pyle and Floyd Kimble had a business relationship, and John Pyle performed numerous surveys for Floyd and Doris Kimble."

{¶20} "13. Charles B. and Beatrice Franks granted a lease to Penn Ohio Coal Co. for their property (hereafter referred to as the 'Franks Property') that is adjacent to property owned by Doris Kimble. Penn Ohio Coal Co. also has leases on the York Property and the Ervin Property.

{¶21} "14. Penn Ohio Coal Co. obtained a mining permit that includes approximately 274 acres; however, Penn Ohio Coal Co. does not intend to remove minerals from the Franks Property or the entire Ervin Property over the easement. Penn Ohio Coal Co. has an alternative route to reach these sections of their mining operation. Penn Ohio Coal Co. does, however, intend to remove minerals from the York Property and part of the Ervin Property over the Easement."

{¶22} Penn Ohio Coal Co. is not a party to this lawsuit but the court found appellee could extend her right of ingress and egress over the easement to Penn Ohio Coal Co. because it transacts business with appellee, and the use is reasonable and consistent with the grant of the easement.

{¶23} Based upon these facts, the trial court concluded that the evidence does not support the termination of the easement or an injunction against the misuse of the easement. The Court found that the appellee has not misused or abused the subject easement, and the easement had not been used for ingress or egress to the Franks Property, although it has been used for ingress and egress to the York Property and part of the Ervin Property.

**{¶24}** The Court found that Floyd and Doris Kimble owned the York Property prior to the grant of the easement, and John Pyle and Floyd and Doris Kimble reasonably contemplated and intended that the easement would be used for the extraction of minerals from the York and Ervin Properties. The Court found that use of the easement by Doris Kimble and her family, as well as by Penn Ohio Coal Co., when transacting business with Doris Kimble, is reasonable and consistent with the grant of the easement.

**{¶25}** The trial court cited our case of *State ex rel. Fisher v. McNutt*, 73 Ohio App. 3d 403, 597 N.E.2d 539 (1992). The easement language in this case is strikingly similar to the easement language in *McNutt*. In *McNutt*, the original grant of the easement in question was made by the appellant's predecessor in title, Stuart Fauber, to the state's predecessor in title, Ella Harmer, in 1887, and was exclusively for "road purposes". In 1958, the state acquired the former Harmer property, 77.7 acres, from the federal government along with an additional 4,764.6 acres of federal property immediately adjacent to the Harmer land. In 1967, the McNutts acquired the former Fauber property which included the property servient to the easement.

**{¶26}** The state intended to use the road easement on McNutt's property to "manage" the entire 4,842 acres. Forestry management in this case included, but was not limited to: boundary maintenance; inspection, measurement and inventory of trees; timber stand improvement; timber harvest; enforcement of forest laws by forest officers; protection of forest from fires; prevention, detection and suppression of forest insects and disease; scouting and correcting forest tree seeds; recreation management, inspection, development, maintenance of forest facilities and trails; mineral

management by authorized agencies; examination for scientific research into endangered or threatened plant or wild life, hydrology concerns, unique geographical features; and any other activity necessary for prudent forest management.

{¶27} In *McNutt,* the state argued the use of the easement was not limited to the original 77.7 acres because the original grant of the easement did not state whether the easement was for the sole benefit of Harmer's property and did not specifically reference Harmer's property.

{¶28} The trial court in *McNutt* found the state could use its easement to manage all the acreage, and to do so would not unreasonably burden the McNutts' property. On appeal this court did not agree, finding the easement was granted for, and limited to, the original 77.7 acres, and to extend the easement to a total of 4,842.3 acres was an unreasonable increase in the burden on the servient estate, which could not have been intended by the original grantor and grantee.

{¶29} In the case at bar, JoAnn Pyle, who along with her now-deceased husband was appellants' predecessor in title, testified she had never discussed the grant of the easement with appellee, but she did discuss it with her husband. She testified she believed the easement was for access to gas and oil wells. Pyle testified while she and her husband would perhaps have granted the easement for the hauling of coal from the York property, they would not have done so for the larger tract.

{¶30} Appellee did not testify she was actually involved in the negotiations for the easement but stated the easement was wide, which meant it would be the best way to transport material from that side of the hill. She testified her husband intended to use the easement to access the York property and any additional property they might

acquire. Her husband is deceased and appellee testified her own involvement in the coal business was to keep records and keep track of things for taxes and billings.

**{¶31}** It appears that neither Pyle nor appellee participated in the actual negotiation of the grant to the easement, but only could testify as to what their deceased husbands intended. The trial court concluded from the Pyles' knowledge that appellee generally mined coal the parties intended this particular easement to be used to transport coal from both the York and Ervin properties. This conclusion does not follow.

**{¶32}** As to the burden on the appellants' property, evidence was introduced that appellee intends to remove approximately 14,000 tons of coal from the York property and 250,000 tons from the Ervin property, using the easement to transport all the coal. We find if the appellee prevails, the use of the easement for ingress and egress would not change but the burden on appellants' property would be substantially greater.

**{¶33}** If the language of an easement is unambiguous, parole evidence is not admissible to construe it. Assuming *arguendo* the language of this easement is ambiguous, we find the facts and circumstances the court considered are insufficient to support its finding that the easement extends to the Ervin property. We find that, as in *McNutt, supra,* the easement here was granted to benefit the dominate estate as it existed at the time.

**{¶34}** The evidence regarding whether the parties intended the easement to be used to transport coal from the York property is not as clear. We defer to the trial court's determination the easement can be used to transport minerals from the York property.

Appellants are not entitled to a permanent injunction barring all use of the easement to transport coal, nor are they entitled to terminate the easement.

{¶35} Assignments of Error I and II are sustained as to the Ervin property and overruled as to the York property.

III

{¶36} Appellants claim the trial court erred in permitting use of the easement by Penn Ohio Coal Company as Penn Ohio is a non-party to the action and pursuant to *Fruth Farms Ltd. v. Village of Holgate* (N.D.Ohio 2006), 422 F.Supp.2d 470, its use is barred. We agree in part.

{¶37} The trial court never specifically addressed the use of the easement by Penn Ohio for its mining permit over 274 acres which includes the Franks, York, and Ervin properties, but found it is entitled to use the easement by virtue of its business dealings with appellee. The record is unclear whether Penn Ohio Coal Co. intends to transport minerals solely from its own leases or will be contracted to haul appellee's minerals as well.

{¶38} Because we find in I and II *supra* that the easement is limited to the appellee's ingress and egress to the York property, we find Penn Ohio Coal Co. cannot use the easement to transport its minerals.

{¶39} The third assignment of error is sustained in part and overruled in part.

**{¶40}** The judgment of the Court of Common Pleas of Tuscarawas County, Ohio is hereby affirmed in part and remanded in part. On remand, the trial court shall issue an injunction to prohibit the transportation of minerals and equipment from the Franks and Ervin Properties over the easement, and to limit the use of the easement to appellee.

By Gwin, P. J. and

Edwards, J. concur;

Farmer J., dissents

_____
HON. W. SCOTT GWIN


_____
HON. SHEILA G. FARMER


_____
HON. JULIE A. EDWARDS

*Farmer, J., dissents*

**{¶41}** I respectfully dissent from the majority's opinion in Assignments of Error I and II.

**{¶42}** The gravamen of this case is whether a lease for the gas and oil rights on the Ervin Property can bootstrap the appurtenant easement to include the Ervin Property.

**{¶43}** The majority at ¶25 finds "the facts and circumstances the court considered are insufficient to support its finding that the easement extends to the Ervin property." I disagree. The majority at ¶17-20 also finds the easement language in this case to be strikingly similar to the easement language in the *McNutt* case.

**{¶44}** In *McNutt,* the original grantor, Stuart Fauber, granted an easement for "road purposes" to the original grantee, Ella Harmer, who owned 77.7 acres. Many years later, the state of Ohio, Department of Natural Resources, acquired the 77.7 acres plus an additional 4,764.6 acres adjacent to the 77.7 acres. The state intended to use the easement for the entire 4,842.3 acres. This court at 408 found the easement was limited to the 77.7 acres, stating "[r]easonable minds looking at this evidence could only conclude the intentions of the original grantee and grantor of the easement were that the right of way would only be used for ingress and egress to Harmer's 77.7 acres."

**{¶45}** In the case sub judice, JoAnne Pyle, one of the original grantors of the easement, testified to the following:

**{¶46}** "Q. Okay, um, was there an indication of, um, what Floyd [appellee's husband] intended to do with the easement?

**{¶47}** "A. He was drilling a gas well on our property at the time. He asked for the easement and he also had the Ervin property leased for gas and oil. We assumed he was using that easement then or very soon and was going to move from our property over there and drill a gas well." T. at 10-11.

**{¶48}** Under the facts of this case, the surrounding circumstances at the time of the granting of the easement were as follows:

**{¶49}** 1) The Pyles granted the Kimbles a right of ingress and egress across their property.

**{¶50}** 2) At the time, the Kimbles owned the York Property and the gas and oil rights to the Ervin Property. T. at 10-11, 12-13.

**{¶51}** 3) According to the testimony of JoAnn Pyle, the Pyles were aware of the Kimbles' gas and oil lease on the Ervin Property. T. at 10-11.

**{¶52}** 4) John Pyle worked as a surveyor, had a business relationship with Floyd Kimble, and performed numerous surveys for the Kimbles. T. at 89, 144-145.

**{¶53}** In *McNutt,* the additional acreage was acquired many years after the granting of the easement. In this case, at the time of the granting of the easement, the Kimbles owned the York Property and the gas and oil lease on the Ervin Property and the Pyles were aware of the Kimbles' lease on the Ervin Property.

**{¶54}** Based upon Mrs. Pyle's cited testimony, reasonable minds looking at this evidence could conclude that the Pyles contemplated the easement as extending to the Ervin Property via the Kimbles' gas and oil lease. I would find the easement appurtenant includes the Ervin Property.

{¶55} The easement granted on October 12, 1976 granted appellee and her husband an easement "for ingress and egress upon, over and across" the Pyles' property. The easement was very broad in scope. It did not include a provision limiting the ingress and egress to gas and oil drilling only.

{¶56} Given Mrs. Pyle's direct testimony wherein she acknowledged the future extraction of gas and oil from the Ervin Property, I would find appellee is entitled to transport materials over the easement from the York and Ervin Properties. The broad granting of ingress and egress cannot be limited to gas and oil only without a specific limiting provision which was not included in the easement sub judice.

{¶57} I would find the trial court did not err in extending the easement to the Ervin Property and I would deny the assignments of error.

_____
HON. SHEILA G. FARMER

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO

FIFTH APPELLATE DISTRICT

FELSON W. DIEMLING, ET AL.          :
                                    :
    Plaintiffs-Appellants          :
                                    :
-vs-                                :         JUDGMENT ENTRY
                                    :
DORIS KIMBLE                        :
                                    :
    Defendant-Appellee             :         CASE NO. 11AP120047


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio is affirmed in part and reversed in part, and the matter is remanded to said court for further proceedings consistent with this opinion. Costs to be split between appellants and appellee.


_____
HON. W. SCOTT GWIN


_____
HON. SHEILA G. FARMER


_____
HON. JULIE A. EDWARDS