[Cite as *J.T. Mgt. v. Spencer*, 2017-Ohio-892.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| J.T. MANAGEMENT, AN OHIO LIMITED PARTNERSHIP, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellant/ | : | **CASE NOS. 2016-T-0018** |
| Cross-Appellee, | : | **and 2016-T-0021** |
| - vs - | : | |
| PATRICIA L. SPENCER, et al., | : | |
| Defendants-Appellees/ | : | |
| Cross-Appellants. | : | |
| | : | |

Civil Appeals from the Trumbull County Court of Common Pleas, Case Nos. 2013 CV 01445 and 2013 CV 01653.

Judgment: Affirmed.

*Randil J. Rudloff,* Guarnieri & Secrest, P.L.L., 151 East Market Street, P.O. Box 4270, Warren, OH 44482 (For Plaintiff-Appellant/Cross-Appellee).

*David A. Detec* and *Adam V. Buente,* Manchester, Bennett, Powers & Ullman, The Commerce Building, Atrium Level Two, 201 East Commerce Street, Youngstown, OH 44503 (For Defendants-Appellees/Cross-Appellants).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, J.T. Management, an Ohio Limited Partnership, appeals the judgment of the Trumbull County Court of Common Pleas, following a trial to the magistrate, finding appellant is not authorized to use its interest in a private driveway for commercial purposes. Appellees, Patricia L. Spencer, the other holders of an interest in

the driveway, and the Hidden Hills Homeowners Association, cross-appeal the court's finding that appellant has an ownership interest in the driveway. For the reasons that follow, we affirm.

{¶2} On July 11, 2013, appellant, a commercial real estate developer, filed a complaint for declaratory judgment. Appellant alleged it owns lot 9 in the Hidden Hills Subdivision in Howland Township and an undivided one-ninth interest in a private driveway in the subdivision known as "Hidden Hills Drive." Appellant alleged it and the owners of the other eight lots have an access right of way on the driveway.

{¶3} Appellant alleged it also owns a second 1.4-acre parcel on S.R. 46 at the intersection of Hidden Hills Drive and that the second parcel is subject to an easement that allows it to use Hidden Hills Drive for the benefit of this parcel. Appellant demanded judgment declaring it has a right to use the driveway in relation to its 1.4-acre parcel for any and all uses, including commercial traffic.

{¶4} Appellees, the owners of the remaining eight lots in the subdivision and the Hidden Hills Homeowners Association, filed an answer denying the material allegations of the complaint. They also filed a counterclaim/cross claim, demanding judgment declaring that appellant does not have an ownership interest in the private driveway, but only a right of way easement to access S.R. 46 for residential use.

{¶5} The case was tried to the magistrate and submitted on the parties' briefs, stipulations, and joint exhibits.

{¶6} The evidence revealed that the Hidden Hills Subdivision, a secluded residential housing development, was created on November 24, 1978, with the recording of the Hidden Hills Plat, which depicted lots one through eight. The plat stated that each lot shall have an undivided one-eighth interest in the private driveway

2

to be known as Hidden Hills Drive. The lot owners own the land in the Hidden Hills Subdivision, including the private driveway, which is essentially a long residential driveway between S.R. 46 and the homes in the subdivision.

{¶7} On the same date, November 24, 1978, a Declaration of Restrictive Covenants (Deed Restrictions) for the Hidden Hills Subdivision was recorded. The Declaration contained deed restrictions for the benefit of all lots in the subdivision. It also created a homeowner's association and a yearly maintenance fee to cover the cost of driveway maintenance and electricity.

{¶8} In November 1981, a replat of the subdivision, signed by all lot owners, was recorded, which included lot 9, and stated that the owners of each lot shall have an undivided one/ninth interest in Hidden Hills Drive.

{¶9} Appellant subsequently purchased two lots that abut the private driveway. In 2011, it acquired lot 9 in the subdivision by deed. As a result of appellant's ownership of lot 9 and the replat dividing ownership of the driveway, appellant argued it owned a one-ninth interest in the private driveway.

{¶10} In 2008, appellant acquired by deed a second lot (not part of the subdivision), which is a commercially-zoned, 1.4-acre parcel on S.R. 46, located in front of lot 9, at the intersection of Hidden Hills Drive. The address of this second parcel is 1849 Niles-Cortland Road (hereafter referred to "the 1849 lot"). Long before appellant acquired the 1849 lot, the prior owners of this lot had an implied easement by necessity over the subject driveway, which gave them access to S.R. 46. Thereafter, in October 1975, the then-owner of the 1849 lot reduced the implied easement to writing and expressly granted an easement to use the private driveway to appellant's predecessors-

3

in-interest, their heirs and assigns. Thus, when appellant later acquired this lot in 2008, it also acquired an express easement in the private driveway.

{¶11} Appellant argued it was entitled to use the private driveway for commercial ingress and egress to a commercial structure it plans to build on the 1849 lot pursuant to (1) the express easement and (2) appellant's alleged one-ninth ownership interest in the private driveway.

{¶12} Following the magistrate's review of the parties' stipulations, exhibits, and trial briefs, she issued her decision on October 1, 2015, finding that appellant owns an undivided one-ninth interest in the private driveway. However, the magistrate found that the subdivision's deed restrictions limit use of the driveway to residential uses.

{¶13} The parties filed objections to the magistrate's decision. Thereafter, the trial court conducted an independent review of the objections and adopted and affirmed the magistrate's decision in its entirety. Specifically, the court found in favor of appellant on the issue of ownership and found that it is a one-ninth owner of the private driveway (Hidden Hills Drive) by virtue of its ownership of lot 9. However, the court found in favor of appellees on the issue of the use of the easement and ordered appellant not to increase the burden on or materially enlarge its right in the easement by using the private driveway for commercial ingress and egress.

{¶14} Appellant appeals and appellees cross appeal the trial court's judgment. Appellant asserts the following for its sole assignment of error:

{¶15} "The trial court erred in holding that JT could not use a portion of Hidden Hills driveway for commercial purposes incident to JT's adjoining commercial land."

{¶16} An easement is an interest in land created by grant or prescription that entitles the owner of the easement to a limited use of the land in which the easement

4

exists. *Alban v. R.K. Co.*, 15 Ohio St.2d 229, 231 (1968). An easement results in the creation of two estates: The dominant estate is the owner of the easement and the servient estate is the land subject to the easement. *Lone Star Steakhouse & Saloon of Ohio, Inc. v. Ryska,* 11th Dist. Lake No. 2003-L-192, 2005-Ohio-3398, ¶24.

{¶17} In general, "[t]he abuse of discretion standard is * * * the appropriate * * * standard to apply when reviewing a trial court's adoption of a magistrate's decision." *Harkey v. Harkey*, 11th Dist. Lake No. 2006-L-273, 2008-Ohio-1027, ¶47. However, because this case was decided on the parties' factual stipulations and the magistrate's/court's construction of various legal instruments, including deeds, deed restrictions, contracts, plats, and zoning documents, the only issues presented here are legal questions that we review under the de novo standard of review. *Allstate Indemn. Co. v. Collister*, 11th Dist. Trumbull No. 2006-T-0112, 2007-Ohio-5201, ¶15.

{¶18} Appellant raises three issues under its assigned error. First, it argues it should be permitted to expand its express easement in the private driveway to use it for commercial purposes in connection with the 1849 lot because the area has changed from primarily residential to primarily commercial. In response, appellees argue that any commercial use will unreasonably increase the burden on the easement. The cases cited by appellant in support of this argument are inapposite as none of them held that use of an easement can be expanded from solely residential uses to include commercial uses.

{¶19} The Fifth District, in *Solt v. Walker*, 5th Dist. Fairfield No. 95-CA-64, 1996 WL 363438 (May 13, 1996), succinctly stated the law regarding changes in the use of an easement:

**{¶20}** While an easement or right-of-way gives a landowner the right to enter and use the land of another, the owner of a dominant estate may not increase the burden nor materially enlarge his right over the servient estate. *McKenzie v. Neville*, 139 Ohio St. 136 (1941). An easement may be terminated where the owner of said easement attempts to enlarge or abuse it. *Siferd v. Stambor,* 5 Ohio App.2d 79 (3d Dist.1970). However, changes in the use of an easement are permitted to the extent that they result from "the normal growth and development of the dominant land," and are, therefore, a proper and reasonable use of the easement. *Erie Railroad Co. v. S. H. Kleinman Realty Co.*, 92 Ohio St. 96 (1915). *Solt, supra*, at *1.

**{¶21}** Appellant's easement by its express terms allows the grantees of the 1849 lot, their heirs and assigns, to freely pass on foot, or with vehicles of every description, between S.R. 46 and its property. Any change in the use of the easement is only permitted if it results from normal growth and development of the dominant estate and is a proper and reasonable use of the easement. *Erie. R. Co., supra*; *Solt, supra*.

**{¶22}** Further, increased traffic on an access easement can result in an unreasonable enlargement and abuse of the easement. *Id.,* at *2. The Fifth District in *Solt* identified certain factors that are pertinent in determining whether a dominant estate has unreasonably expanded the use of an access easement, such as 1) the amount of increased traffic on the easement; 2) the time of day when vehicles used the easement; 3) the extent that traffic noise increased; and (4) whether vehicles using the easement travelled at excessive speeds. *Id.*

**{¶23}** It is undisputed that, historically, the private driveway has only been used as a means of ingress and egress between S.R. 46 and the homes in the Hidden Hills Subdivision or the home on the 1849 lot. Thus, the driveway has always been used for residential use only and never for commercial purposes. The parties stipulated to an engineer's Traffic Impact Study performed in connection with an attempt by a previous

6

owner of the 1849 lot to obtain a variance to use the easement for a commercial purpose. The BZA denied the request and the trial court affirmed the denial, which was not further appealed. That study forecasted the impact of a commercial use of the private driveway by considering its use for ingress and egress for a 1,000 square foot fast food restaurant to be built on the 1849 lot. In the study, the engineer found that the driveway had an actual daily traffic count of 38 vehicles under its current residential use. However, the engineer found that a fast food restaurant would have an average weekday traffic volume of 2,452 vehicles, resulting in a daily traffic volume increase on the easement of 6,352 per cent (or 64 times). The engineer also determined that the same restaurant would have an average weekend daily traffic volume of 3,569 vehicles, resulting in a weekend daily traffic volume increase of 9,292 per cent (or 93 times).

{¶24} Based on this study, which the magistrate referred to as a "reasonable indicator into what impact commercial traffic would have on the private drive," the magistrate found that commercial use of the easement would result in increased traffic, traffic noise, and wear and tear to the servient estate. The magistrate found the cost for the increased wear and tear would be borne by the property owners. The magistrate also found the commercial use would result in a financial burden to appellees as owners of the private driveway because the driveway is maintained by the homeowner's association and is insured by the individual property owners via policies that insure them solely for residential use of the driveway, not for commercial uses. The magistrate also found the increased traffic would inconvenience the property owners and impinge on their beneficial enjoyment of the right to use the driveway. Based on these findings, the magistrate found the proposed commercial use of the easement would create an unreasonable burden on the easement.

**{¶25}** The Fifth District addressed the issue of the allowable percentage increase of the burden on an easement in *State ex rel. Fisher v. McNutt*, 73 Ohio App.3d 403 (5th Dist.1992). The Fifth District held that where the holder of the right-of-way easement proposed to engage in activity that would increase the burden on the easement by 60 times, this was an unreasonable increase in the burden to the servient estate. *Id.* at 408. This increase in the burden is obviously far less than the increase that would result from the private driveway in the instant case being used to provide access to a commercial building on the 1849 lot.

**{¶26}** It is worth noting that appellant has alternate access for the 1849 lot to S.R. 46 because it has frontage on S.R. 46 with an existing curb cut.

**{¶27}** We therefore hold the trial court did not err in finding that appellant's proposed commercial use of the driveway would dramatically exceed its intended and historic residential use and would thus improperly increase the burden and materially enlarge its right over the easement.

**{¶28}** For its second issue, appellant argues that because the language of its express easement is stated in broad and unrestricted terms, it should be interpreted as allowing use of the easement for commercial purposes.

**{¶29}** "A right of way created by an unrestricted, general grant of an easement cannot be used in a manner that burdens the servient estate more than was originally contemplated by the parties; an unrestricted access easement does not allow unlimited use, but only reasonable use." *Fruth Farms, Ltd. v. Holgate*, 442 F.Supp.2d 470, fn. 6 (N.D. Ohio 2006).

**{¶30}** The goal of interpreting any written instrument, including the grant of an easement, is to determine the intent of the parties. *Murray v. Lyon*, 95 Ohio App.3d

8

215, 219 (9th Dist.1994). "In order to determine the extent of an easement, it is necessary to look at the instrument which created it and examine the surrounding circumstances existing at that time to determine the parties' intentions." *Ohio Edison Co. v. Gilmore*, 106 Ohio App.3d 6, 11 (11th Dist.1995), citing *Centel Cable Television Co. of Ohio, Inc. v. Cook*, 58 Ohio St.3d 8, 10 (1991). The language of the easement and the surrounding circumstances provide the best indication of the extent and limitations of the easement. *Apel v. Katz*, 83 Ohio St.3d 11, 17 (1998).

{¶31} The easement at issue here provided:

{¶32} [T]he grantors, in consideration of the sum of One Dollar, paid by the Grantees * * *, do hereby grant ** * unto the grantees, their heirs and assigns forever, a right of way on and over a certain piece of land owned by the Grantors as follows (legal description omitted) * * * [f]or the grantees, their heirs and assigns, * * * to freely pass * * * on foot, or with vehicles of every description, to and from [S.R. 46] to said land of the grantees.

{¶33} In interpreting whether the parties intended the private driveway to be used for commercial uses, we must look to the surrounding circumstances at the time the easement was created in October 1975.

{¶34} The parties stipulated that when the express easement was created, S.R. 46/Niles-Cortland Road was a two-lane road bordered by residential houses, and that the 1849 lot and the private driveway were zoned by Howland Township for residential use only. Three years later, in 1978, the Hidden Hills Subdivision was established by plat along with deed restrictions for the subdivision. In the following years, S.R. 46 became a five-lane road. While the 1849 lot is now zoned for commercial use, as noted above, the only use ever made of the private driveway from its construction to the present was residential, to provide the property owners access to their homes in the Hidden Hills Subdivision and on the 1849 lot. Further, the private driveway remains

9

zoned for residential use only. Thus, when the implied easement of necessity was put in writing in 1975, the parties could not have intended its use for commercial purposes because such use was never made of the driveway and would have been prohibited by law. We therefore hold the trial court did not err in finding that the parties did not intend the driveway to be used for commercial purposes and thus the express easement does not authorize such use.

{¶35} Appellant's third and last issue and appellees' cross assignment of error are related and thus considered together. Appellant argues that, in addition to the express easement it obtained in acquiring the 1849 lot, it also owns a one-ninth interest in the private driveway pursuant to the subdivision's replat. It argues this ownership interest in the driveway also authorizes it to use the driveway in relation to the 1849 lot for commercial traffic. Appellees disagree and allege in their cross assignment of error, as follows:

{¶36} "The trial court erred in finding that J.T. Management possessed a one-ninth ownership interest in the private driveway."

{¶37} In support of appellant's alleged ownership of a one-ninth interest in the driveway, it argues that in November 1981, the prior owners of all nine lots signed and recorded the replat, which created and described lot 9, and stated, "The owners of each lot * * * shall have an undivided 1/9 interest in and to the private driveway known as Hidden Hills Drive." The prior owners subsequently sold lot 9 to appellant's predecessor who, in turn, later sold the lot to appellant.

{¶38} In opposition, appellees argue that appellant's claim of entitlement to a one-ninth interest in the driveway is based on a replat of the subdivision and, pursuant to R.C. 5302.01, a plat is not listed as one of the authorized forms by which an interest

10

in land can be transferred (such as a deed or mortgage). However, to the contrary, that statute also provides that "the authorization of those forms shall not prevent the use of other forms." Thus, R.C. 5302.01 does not prohibit use of a plat to convey an interest in a common driveway to owners of lots in a subdivision.

{¶39} Appellees also argue that, pursuant to R.C. 711.11, a plat can only be used to convey real property to a municipal corporation. That section provides that plats are sufficient to convey parcels of land intended for "public use." However, pursuant to R.C. 711.24, the owners of town lots may change the lots or roads by making a new plat and giving their consent thereon. Further, plats have been held to grant lot owners access easements. *See Clagg v. Baycliffs Corp.*, 82 Ohio St.3d 277, 279 (1998). Here, the replat states that each lot owner shall have a one-ninth interest in the driveway. Moreover, the plat was signed by all lot owners, acknowledged, and recorded. As a result, the particular form the parties' predecessors chose to grant an interest in the private driveway is not determinative. We therefore hold the trial court did not err in finding that appellant owns a one-ninth interest in the private driveway.

{¶40} In any event, even if appellant had no ownership interest in the driveway, it would have had an implied easement for purposes of a road because the lots in the subdivision were purchased by reference to a plat showing the driveway. *Clagg, supra.*

{¶41} Appellees argue that, even if the replat of the Hidden Hills Subdivision could be used to transfer an interest in the driveway to appellant, the existence of certain alleged irregularities in the replat would have made the attempted transfer ineffective. Specifically, appellees argue that the replat was not signed by one of the lot owners, Hoda Rouweyha; the notary's acknowledgement on the replat was deficient; and the replat was not properly witnessed. As to the owner's signature, the magistrate

11

indicated that appellees failed to cite any evidence that she was a lot owner when the replat was signed. Further, appellees do not dispute on appeal that Ms. Rouweyha's presumed husband, appellee, Marwan R. Rouweyha, signed the replat or that he did so on their behalf as co-owners of lot 6.

{¶42} Moreover, R.C. 5301.07 provides:

{¶43} When any instrument conveying real estate, or any interest therein, is of record for more than twenty-one years in the office of the county recorder of the county within this state in which such real estate is situated, and the record shows that there is a defect in such instrument, such instrument and the record thereof shall be cured of such defect and be effective in all respects *as if such instrument had been legally made, executed, and acknowledged*, if such defect is due to any one or more of the following:

{¶44} (A) Such instrument was not properly witnessed.

{¶45} (B) Such instrument contained no certificate of acknowledgment.

{¶46} (C) The certificate of acknowledgment was defective in any respect.

{¶47} Any person claiming adversely to such instrument * * * may, at any time within twenty-one years after the time of recording such instrument, bring proceedings to contest the effect of such instrument. (Emphasis added.)

{¶48} Since the replat was recorded 32 years before appellees raised this issue in their counterclaim/cross claim, any defect in the replat is cured and this argument is time-barred.

{¶49} However, while appellant has an ownership interest in the private driveway, it is part of the Hidden Hills Subdivision and is therefore subject to the deed restrictions in the Declaration of Restrictive Covenants. The restrictions forbid "trade" from being carried on upon any lot in the subdivision.

12

**{¶50}** This court outlined the law regarding restrictive covenants in *Grace Fellowship Church, Inc. v. Harned*, 11th Dist. Trumbull No. 2013-T-0030, 2013-Ohio-5852, as follows:

> **{¶51}** A restrictive covenant is a "private agreement, [usually] in a deed or lease, that restricts the use or occupancy of real property, [especially] by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put." *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, ¶28, citing Black's Law Dictionary 371 (7th Ed.Rev.1999). In the context of property law, a "covenant" denotes a contract that is either personal or "runs with the land." *Maasen v. Zopff*, 12th Dist. Warren Nos. CA98-10-135, CA98-10-138, and CA98-12-153, 1999 WL 552747, *3 (July 26, 1999). Restrictions running with the land are "intended to limit the grantee's use of the land to specified purposes, with the object of protecting the interests of all landowners in the same allotment." *Id*. *Grace, supra,* at ¶25.

**{¶52}** "The rule in interpreting restrictive covenants is that 'when a covenant's language is indefinite, doubtful, and capable of contradictory interpretations, courts are to construe the covenant in favor of the free use of land. * * * However, courts must enforce a restriction where it is clearly and unambiguously found in a covenant.'" *S & S Aggregate, Inc. v. Brugmann*, 11th Dist. Portage No. 2001-P-0079, 2002-Ohio-7348, ¶13, quoting *Brooks v. Orshoski*, 129 Ohio App.3d 386, 390 (6th Dist.1998).

**{¶53}** Appellees argue that the provision in the deed restrictions prohibiting "trade" in the subdivision prevents appellant from using the easement for commercial purposes. Although the restrictions do not define the term "trade," in the analogous zoning context, the Tenth District in *Windsor v. Lane Development*, 109 Ohio App. 131 (10th Dist.1958), held that the defendant's use of a driveway on land zoned for residential use to enter and exit the defendant's shopping center was a commercial use of the driveway, which violated the zoning resolution prohibiting use of the property for purposes of "trade." *Id.* at 139, 143.

13

{¶54} We therefore hold the trial court did not err in finding that appellant's contemplated use of the easement for ingress and egress to and from its commercial parcel constitutes trade and thus violates the restrictive covenant prohibiting the use of the private driveway for such purpose.

{¶55} For the reasons stated in this opinion, the assignments of error are overruled. It is the order and judgment of this court that the judgment of the Trumbull County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON, J.,

COLLEEN MARY O'TOOLE, J.,

concur.